T.C. Memo. 2012-3

UNITED STATES TAX COURT

JAVIER L. GAITAN, Petitioner, AND
MONICA GAITAN, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

MONICA GAITAN, Petitioner <u>v</u>. COMMISSIONER OF
INTERNAL REVENUE, Respondent

Docket Nos. 19090-09, 21254-09.    Filed January 3, 2012.

<u>Joseph A. DiRuzzo, III</u>, for Monica Gaitan.

Javier L. Gaitan, pro se.

<u>Tracey B. Leibowitz</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  Javier L. Gaitan and Monica Gaitan filed a

joint income-tax return for 2006.  The Internal Revenue Service

(IRS) issued notices of deficiency determining a deficiency of

$40,740 and an accuracy-related penalty of $8,148.  The Gaitans filed separate Tax Court petitions asking the Court to redetermine the deficiency and the penalty.  The Court has jurisdiction to make such a redetermination under section 6213 of the Internal Revenue Code.  All citations of sections are to the Internal Revenue Code.  The two cases have now been consolidated. Both Javier and Monica Gaitan seek relief from joint and several liability.  The Court has jurisdiction to grant such relief under section 6015(e).

For reasons we explain later, we hold that:

- The Gaitans are not entitled to reduce the gross income from their clothing-export business by $134,575 for cost of goods sold (part 1(a) of the opinion).

- The Gaitans are not entitled to deductions for $1,890 in car-and-truck expenses and $3,102 in travel expenses supposedly related to their clothing-export business (parts 1(b) and 1(c), respectively).

- The Gaitans were married to each other as of the end of 2006 (part 2).

- Javier Gaitan is entitled to relief under section 6015(c), but not under section 6015(b) or (f) (part 3).

- Monica Gaitan is not entitled to relief under section 6015(f) (part 4).

There are some other issues raised by the notice of deficiency but these are purely computational.

FINDINGS OF FACT

Javier Gaitan was born in Colombia.  He graduated from high school in Colombia.

Monica Gaitan was born in Colombia.  She graduated from high school in Colombia.  She attended college in Colombia but did not graduate.

Monica Gaitan married Esau Correa in Colombia on November 19, 1999.  She had two children with Correa.  She claims that she divorced Correa on August 15, 2002.  Whether the divorce occurred is disputed.

Monica Gaitan married a Cuban named Livannes Chavez in the United States on September 6, 2002.  While still married to Chavez, Monica Gaitan met Javier Gaitan in Miami.  She was divorced from Chavez on July 31, 2003, by order of a Florida state divorce court.

Monica Gaitan married Javier Gaitan on August 22, 2003. They purchased a house on December 15, 2004, in Pembroke Pines, Florida.  The parties have stipulated that the Gaitans were married to each other during 2006, which is the tax year at issue here.  Under the particular circumstances of this case (including the fact that Javier Gaitan is not represented by a lawyer), we

do not construe the stipulation to be an agreement that the Gaitans' marriage was legally valid.

The Gaitans lived together during 2006. Sometime during 2006 the Gaitans established a clothing-export business. The business involved buying clothes in the United States without paying state sales tax and exporting the clothes to Colombia. Monica Gaitan was the primary person who operated the business, but Javier Gaitan performed two important functions: transporting and mailing the clothes.

During 2006 Javier Gaitan owned and operated a car wash in Hialeah, Florida. He had operated the car wash for 25 years. All business transactions involving the car-wash business were done in cash.

In 2006 Monica Gaitan's children were approximately 8 and 11 years of age. Javier Gaitan had an adult child of his own. The Gaitans did not have any children together.

The Gaitans filed a joint income-tax return for 2006. They attached two Schedules C, Profit or Loss From Business, to the joint return.

The first Schedule C was for the clothing-export business. The Schedule C reported (1) gross receipts of $161,500, reduced by cost of goods sold of $134,575, (2) a deduction for car-and-truck expenses of $1,890, and (3) a deduction for meals-and-entertainment expenses of $192. The resulting profit was

calculated to be $24,843. The second Schedule C was for the car wash. That business' profit was reported to be $15,156. The return was prepared by a tax return preparer, Gabino Pina.

The Gaitans separated in September 2007. Monica Gaitan moved out of their house into a two-bedroom apartment. On February 1, 2008, Monica Gaitan filed for divorce from Javier Gaitan with the Circuit Court of the Eleventh Judicial Circuit for Miami-Dade County.

On May 19, 2009, the IRS issued a notice of deficiency to Javier and Monica Gaitan for the tax year ended December 31, 2006. The notice of deficiency was sent to Javier Gaitan's address, which was the house in Pembroke Pines, Florida. The notice of deficiency determined that the Gaitans were not entitled to the $134,575 amount reported on their return for cost of goods sold. The notice of deficiency also disallowed the $1,890 car-and-truck expense deduction. As a result of (1) the adjustments to cost of goods sold and to the car-and-truck expense deduction, (2) a determination of self-employment tax resulting from these two adjustments, and (3) computational adjustments, the notice of deficiency determined that the Gaitans had a deficiency of $40,740. The notice of deficiency imposed a section 6662(a) penalty of $8,148.

On June 11, 2009, the IRS issued an identical notice of deficiency to Javier and Monica Gaitan at her new address in Sunny Isles Beach, Florida.

On August 5, 2009, Javier Gaitan filed his petition. His petition attached the notice of deficiency issued on May 19, 2009. At the time he filed the petition, Javier Gaitan resided in Pembroke Pines, Florida. The Court assigned his case docket No. 19090-09.

Monica Gaitan filed her petition on August 31, 2009, and later filed an amended petition. Attached to her petition and amended petition was the notice of deficiency issued June 11, 2009. At the time she filed her petition, she resided in Sunny Isles Beach, Florida. Monica Gaitan signed her name to the petition. She signed her name and Javier Gaitan's name to the amended petition. The Court assigned docket No. 21254-09. On November 16, 2009, Monica Gaitan filed a notice of intervention in docket No. 19090-09, the case filed by Javier Gaitan.

On November 24, 2009, Javier Gaitan completed a Form 8857, Request for Innocent Spouse Relief, for the 2006 tax year. An IRS workpaper dated December 9, 2009, reflects that the IRS denied relief to Javier Gaitan.

On March 10, 2010, Monica Gaitan completed a Form 8857 for the 2006 tax year. An IRS workpaper dated April 15, 2010, reflects that the IRS denied relief to Monica Gaitan.

On March 24, 2010, the Court dismissed Javier Gaitan for lack of jurisdiction from docket No. 21254-09, the case Monica Gaitan had filed.

On April 15, 2010, the Gaitans were divorced by decree of a Florida court. The decree dissolved the marriage; but the decree did not expressly address the question of whether the marriage was initially valid.

On August 30, 2010, the Court consolidated the two cases, docket Nos. 19090-09 and 21254-09, for trial, briefing, and opinion.

By the time of trial, Monica Gaitan was known as Monica Restrepo. We nonetheless refer to her as Monica Gaitan.

OPINION

1.  The Income From the Clothing-Export Business

In considering a taxpayer's challenge to a notice of deficiency, the notice of deficiency is presumed correct. As a result, the taxpayer bears the burden of production. Gatlin v. Commissioner, 754 F.2d 921, 923-924 (11th Cir. 1985), affg. T.C. Memo. 1982-489; Cozzi v. Commissioner, 88 T.C. 435, 443-444 (1987). The burden of production is satisfied if the taxpayer comes forward with enough evidence to support a finding contrary to the IRS's determination. Estate of Gilford v. Commissioner, 88 T.C. 38, 51 (1987).

The taxpayer also bears the burden of persuasion.  Tax Court Rule of Practice and Procedure 142(a) (burden of proof is on the petitioner); Cozzi v. Commissioner, supra at 443-444; Rockwell v. Commissioner, 512 F.2d 882, 885 (9th Cir. 1975) (the burden of proof imposed by Tax Court Rule 142(a) is the burden of persuasion), affg. T.C. Memo. 1972-133.  The burden of persuasion is satisfied by the preponderance of the evidence.  Estate of Gilford v. Commissioner, supra at 51.  Section 7491(a)(1) imposes the burden of persuasion on the IRS if the taxpayer satisfies the conditions of section 7491(a)(2) and introduces credible evidence on factual issues relevant to the taxpayer's liability for a tax under subtitle A or B of the Internal Revenue Code.  A taxpayer bears the burden of proving that the conditions in section 7491(a)(2) are satisfied.  Rolfs v. Commissioner, 135 T.C. 471, 483 (2010).  Because the Gaitans have neither contended nor adduced evidence that they satisfied these conditions, section 7491(a)(1) does not impose the burden of persuasion on the IRS. Thus, the Gaitans have the burden of persuasion regarding their entitlement to subtractions for cost of goods sold, for deductions for car-and-truck expenses, and for deductions for travel expenses.

The principle of Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), which governs a taxpayer's entitlement to deductions, also applies to cost of goods sold.  See Goldsmith v.

Commissioner, 31 T.C. 56, 62 (1958) (applying principles of Cohan to cost of goods sold).  Under Cohan, if the taxpayer can establish that a deductible expense has been paid but cannot substantiate the precise amount, the court may estimate the amount of the deductible expense.  Cohan v. Commissioner, supra at 543-544.  There must be some basis for making the estimate. See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  In making the estimate, the Court may resolve uncertainties against the taxpayer.  Cohan v. Commissioner, supra at 543-544.  This is because the taxpayer--not the IRS--is at fault if there is not enough information about the taxpayer's expenses to accurately calculate the deduction.  Id.

    a.  Cost of Goods Sold

Cost of goods sold is the amount that the taxpayer expended to purchase or construct inventory sold during the year.  See 26 C.F.R. sec. 1.162-3(a); Huffman v. Commissioner, 126 T.C. 322, 324 (2006), affd. 518 F.3d 357 (6th Cir. 2008).  Cost of goods sold is subtracted from gross receipts in computing gross income. Beatty v. Commissioner, 106 T.C. 268, 273 (1996).  It is not a deduction.  Id.  A personal expense is not allowable as cost of goods sold.  Sec. 262(a); Estate of Briden v. Commissioner, 11 T.C. 1095, 1134 (1948), affd. sub nom. Kirk v. Commissioner, 179 F.2d 619 (1st Cir. 1950).

The Gaitans reported $161,500 of gross receipts and claimed $134,575 in cost of goods sold on their Schedule C for the clothing-export business.  The IRS disallowed the subtraction for the cost of goods sold.  The Gaitans testified that their clothing-export business consisted of purchasing clothes in the United States and exporting them to Colombia.

Monica Gaitan attempted to prove the cost of goods sold through two types of documentation:  (1) receipts and (2) statements for her American Express card.  She asserts that through such evidence she has substantiated $70,275.29 of the $134,575 originally claimed on the return.

The receipts, which were marked for identification as Exhibits 17-P and 25-P, are insufficient for us to estimate the cost of the clothing purchased for export to Colombia.  There are four problems with the receipts:

(1) The receipts do not indicate which purchases of clothing were for export and which purchases were for the Gaitans' personal use.

(2) Many of the receipts submitted by the Gaitans are illegible.  Examples include receipts on pages 1, 3, 10, 14, and 16 of Exhibit 25-P.

(3) Many of the receipts do not clearly identify the purchaser.  Examples include receipts on pages 3, 4, 5, 10, 12, 33, 34, and 37 of Exhibit 17-P.

(4) Some of the receipts show that the purchases were made for the car-wash business. There would be double counting of deductions if the purchases were also deducted on the Schedule C for the car-wash business.

Next, Monica Gaitan submitted into evidence American Express statements. Monica Gaitan testified that she highlighted the entries for purchases that were personal, and that she did not highlight the entries that were business-related purchases. The highlighting was done shortly before trial. The entries that were not highlighted appear to show that Monica Gaitan purchased clothing at clothing stores.

Besides her perfunctory testimony about the highlighting, no other evidence corroborates that the purchases reflected on the American Express statements were purchases of business inventory. In addition, Monica Gaitan did not bring to the trial complete copies of the statements. Because some of the statements are missing from the trial record, there is a possibility that some of the payments reflected on the American Express statements in the record were recredited to Monica Gaitan later.

Because of the lack of evidence corroborating the American Express statements and because the statements themselves are incomplete, the American Express statements do not convince us that Monica Gaitan made business purchases.

The defects in Monica Gaitan's receipts, American Express statements, and testimony prevent us from estimating the amount of cost of goods sold. She might have compensated for these defects by introducing evidence about the clothing that she sold. However, the record shows only that she made two small shipments of clothes out of the United States: a shipment on June 6, 2006, of clothes with a reported value of $845; and a shipment on September 16, 2006, of clothes with a reported value of $450. We are not sure of the specific clothes to which these records correspond, for what purpose the clothes were valued, or who, if anyone, bought the clothes. Therefore, the two shipping records do not help establish an estimate of cost of goods sold. Under the circumstances, the Gaitans are entitled to no offset for cost of goods sold.

b. Car-and-Truck Expenses

In her brief, Monica Gaitan did not address the car-and-truck deduction claimed on the Schedule C for the clothing-export business. Therefore, she is deemed to have conceded that no such deduction is allowable. See Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989). Javier Gaitan did not file a brief. Under the circumstances, he too has conceded the deduction. Furthermore, the Gaitans presented no evidence at trial concerning how they computed this deduction. We hold that the car-and-truck expense deduction is disallowed.

c. <u>Travel Expenses</u>

Monica Gaitan contends that she is entitled to deduct the cost of trips to (1) Colombia, (2) Orlando, Florida, and (3) New Jersey. She claims that the total cost of the three trips is $3,102.

If a trip is motivated by both business and personal reasons, the cost of the trip is deductible only if the primary purpose of the trip is business. 26 C.F.R. sec. 1.162-2(b)(1). Monica Gaitan has failed to demonstrate that the primary purpose of the trips was business. Her husband and children accompanied her on some or all of the trips. Her husband testified that the trips were primarily vacations. We conclude that the trips were primarily personal. Therefore the Gaitans are not entitled to the travel-expense deduction.

d. <u>Respondent's Motion To Conform Pleadings to the Evidence Presented at Trial</u>

At trial the IRS moved to conform the pleadings to the evidence presented at trial that the Gaitans underreported gross receipts from both the car wash and the clothing-export business. The IRS does not assert an increased deficiency. Rather, the IRS asks that the Court find that the Gaitans had unreported income to the extent that the Court permits any reductions in their income for cost of goods sold. It is unnecessary to rule on the motion to conform the pleadings to the evidence presented at trial. This is because we hold that the Gaitans are not entitled

to reduce the gross income of the clothing-export business for cost of goods sold.

2. <u>Whether the Gaitans Were Married to Each Other as of the End of 2006</u>

Javier and Monica Gaitan both request relief from joint and several liability for 2006. Relief from joint and several liability is available only if the parties have filed a joint return. <u>Raymond v. Commissioner</u>, 119 T.C. 191, 195, 197 (2002).

A joint return may be filed only by a couple that was married as of the last day of the tax year. Sec. 6013(a) (defining a joint return as that made by a "husband and wife"); sec. 6013(d)(1)(A) (status as husband and wife of two individuals having taxable years beginning on the same day is determined as of the close of the year). Persons who are not legally married because of an impediment to a legal marriage on the part of one party are not entitled to file a joint income-tax return. <u>Gersten v. Commissioner</u>, 28 T.C 756, 771 (1957), affd. on this issue and remanded 267 F.2d 195 (9th Cir. 1959). The marital status of individuals is determined under the law of the state where they reside. <u>Von Tersch v. Commissioner</u>, 47 T.C. 415, 419 (1967). Accordingly, we must consider the Gaitans' marital status under Florida law.

Under Florida law, a person who has a living spouse and marries another person is guilty of a third-degree felony. Fla. Stat. Ann. sec. 826.01 (West 2006). A marriage entered into by a

person who has a living spouse is void ab initio. <u>Groover v.</u>
<u>Groover</u>, 383 So. 2d 280, 283 (Fla. Dist. Ct. App. 1980).

Monica Gaitan married her first husband--Esau Correa--in
Colombia on November 19, 1999. She claims that she was divorced
from Correa on August 15, 2002. She then married Livannes Chavez
in Florida--and divorced him. She then married Javier Gaitan in
Florida on August 22, 2003. She filed for a divorce from Javier
Gaitan on February 1, 2008, and they were divorced on April 15,
2010.

Javier Gaitan contends that Monica Gaitan did not divorce
Correa on August 15, 2002, and that his own marriage to her was
therefore void ab initio. He attempted to introduce documentary
evidence that Monica Gaitan did not divorce Correa, but the
evidence was inadmissible. Thus, there is no evidence in the
record that the divorce did not occur.

Furthermore, the IRS contends that the 2010 Florida divorce
decree dissolving the Gaitans' marriage established that the
Gaitans were validly married before the divorce. We agree.

A divorce decree establishes the validity of the marriage
before the divorce for purposes of subsequent disputes between
the two parties to the divorce. See 24 Am. Jur. 2d, Divorce and
Separation, sec. 393 (2008) ("'A final decree granting an
absolute divorce also determines conclusively, as between the
parties, that they were legally married prior to the decree.'"

(quoting <u>Ashley v. Ashley</u>, 51 So. 2d 239, 243 (Ala. 1951) ("We think the effect of the divorce decree of December 2, 1918, in favor of Myrtle Ashley granting a divorce from Lewis J. Ashley, is controlling as to the parties to that suit that prior to and at the time the decree was rendered there was a legal marriage existing between Myrtle and Lewis."))); <u>Petry v. Petry</u>, 118 P.2d 498, 499 (Cal. Dist. Ct. App. 1941) ("It is well established in this state that a final decree of divorce conclusively determines, as between the parties thereto, that they were legally married").  As to nonparties, there is a different rule: the divorce decree establishes only that the married persons are divorced after the date of the divorce decree.  As the Court of Appeals of New York explained:

> "as between strangers or between parties and strangers, a decree of divorce does not establish the previous validity of the marriage, since the res involved and adjudicated is the condition of subsequent singleness of the parties and not the valid prior existence of marital relations between them." * * *

<u>In re Holmes' Estate</u>, 52 N.E.2d 424, 429 (N.Y. Ct. App. 1943), (quoting 2 Freeman on Judgments, sec. 910).  The rules we have discussed were also summarized by the Supreme Court of Vermont:

> A valid divorce decree is conclusive against the world as to the status of the parties as unmarried persons from the time of the decree.  The divorce decree does not, however, establish the facts on which the decree is based in any later proceeding involving strangers to the divorce action.  As to strangers, the divorce decree does not establish the existence of a valid marriage prior to the decree.

In re Estate of Leno, 433 A.2d 260, 262-263 (Vt. 1981) (citations

omitted).  And the Supreme Court of California has stated:

> The weight of authority holds that a decree of divorce
> is a judgment in rem only to the extent that it
> adjudicates the future status of the parties in
> relation to each other.  As between parties or privies,
> the decree is res judicata not only of their status
> with relation to each other but also of all issues that
> were litigated or that could have been litigated
> therein.

Rediker v. Rediker, 221 P.2d 1, 4 (Cal. 1950) (citations

omitted).

In determining the effect of the Florida divorce decree we

must determine which rule to apply:  the rule for parties to the

divorce, or the rule for nonparties.  We believe the rule for

parties controls here.  The purpose of the rule for nonparties,

i.e., the rule that a divorce does not establish the prior

validity of the marriage, is that nonparties should not be bound

by a proceeding in which they did not take part.  Cf. Rediker v.

Rediker, supra at 5 (rights of third parties should not be

"diminished" by giving divorce decree retroactive effect); Ashley

v. Ashley, supra at 243 (a person who is not a party to the

divorce should not be "concluded by the decree of divorce as to

the legal status of the marriage before the divorce").  Although

the IRS was not a party to the Gaitans' divorce action, no one

seeks to bind the IRS with the legal effects of the action.  It

is Javier Gaitan who would be bound.  He was a party to the

Florida divorce action.  He had an opportunity then to

demonstrate that Monica Gaitan had been married before. We conclude that because of his participation in the 2010 Florida divorce decree, Javier Gaitan is barred from arguing in this proceeding that Monica Gaitan's divorce from her first husband was invalid.

For the purposes of this proceeding, Monica Gaitan's marriage to Javier Gaitan was valid until they were divorced in 2010.

3. <u>Whether Javier Gaitan Is Entitled to Innocent-Spouse Relief Under Section 6015(b), (c), or (f)</u>

In general, spouses who file a joint federal income-tax return are jointly and severally liable for the full amount of the tax liability shown or required to be shown on the return. See sec. 6013(d)(3); <u>Butler v. Commissioner</u>, 114 T.C 276, 282 (2000). Section 6015 provides three types of relief from joint liability: relief under subsection(b), subsection (c), and subsection (f). In judicial proceedings to determine whether an individual is entitled to section-6015 relief, the individual seeking relief generally bears the burden of proof. See Tax Court Rule 142(a); <u>Alt v. Commissioner</u>, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004). This Court has jurisdiction to determine whether a taxpayer is entitled to relief, sec. 6015(e), and applies de novo scope and standard of review, <u>Porter v. Commissioner</u>, 132 T.C. 203, 210 (2009) (de novo standard of review; de novo scope of review).

a.    Section 6015(b)

The first requirement for relief under section 6015(b) is that a joint return was filed.  Sec. 6015(b)(1)(A).  A joint return was filed.

The second requirement is that there must be an understatement of tax that is attributable to erroneous items of the other individual filing the joint return.  Sec. 6015(b)(1)(B).  The understatement on the 2006 return related to the clothing-export business.  Javier Gaitan was involved in the clothing-export business.  He transported and mailed clothes. The erroneous cost-of-goods-sold amount and the erroneous car-and-truck expense deduction are therefore not items solely of his spouse.  See Olson v. Commissioner, T.C. Memo. 2009-294 (income from collaborative enterprise was not an item of one spouse). They are items of both Javier Gaitan and Monica Gaitan.

Because Javier Gaitan fails at least one of the requirements for section 6015(b) relief, he is not eligible for section 6015(b) relief.  See Alt v. Commissioner, supra at 313 (requirements for section 6015(b) are conjunctive).

b.    Section 6015(c) Relief

An individual who is no longer married to the person with whom the individual filed a joint return can elect relief under section 6015(c).  Sec. 6015(c)(1), (3)(A)(i)(I).  Section 6015(d) specifies how to determine the electing individual's liability.

A spouse requesting section 6015(c) relief is not entitled to relief for a portion of a deficiency if the spouse had actual knowledge, at the time the return was signed, of an item giving rise to the portion of the deficiency. Sec. 6015(c)(3)(C). The IRS has the burden of production and the burden of persuasion that the spouse had actual knowledge. 26 C.F.R. sec. 1.6015-3(c)(2)(i). The regulation setting forth the test of whether a spouse has actual knowledge of an erroneous item distinguishes an item of "omitted income" from an "erroneous deduction". 26 C.F.R. sec. 1.6015-3(c)(2)(i)(A) provides: "In the case of omitted income, knowledge of the item includes knowledge of the receipt of the income." 26 C.F.R. sec. 1.6015-3(c)(2)(i)(B) provides:

> (1) <u>Erroneous deductions in general</u>. In the case of an erroneous deduction or credit, knowledge of the item means knowledge of the facts that made the item not allowable as a deduction or credit.

> (2) <u>Fictitious or inflated deduction</u>. If a deduction is fictitious or inflated, the IRS must establish that the requesting spouse actually knew that the expenditure was not incurred, or not incurred to that extent.

The IRS contends that Javier Gaitan "knew that the amount claimed on the return as cost of goods sold was inflated". The IRS concedes, however, that if he did not know that the amount was inflated, then the deficiency attributable to the amount should be allocated between Javier Gaitan and Monica Gaitan under section 6015(d).

Although we believe Javier Gaitan knew generally the nature of the cost-of-goods-sold amount reflected on the joint return, i.e., that the amount supposedly represented the cost of clothing that was sold, we do not believe that he knew that the amount was inflated. One prime defect of the amount reported is that it included Monica Gaitan's personal expenses. We think that it was Monica Gaitan who supplied Pina with information about the clothing-export business. It was she, not Javier Gaitan, who knew about the problems with the cost of goods sold reported on the return.

Because section 6015(c) is applicable to Javier Gaitan with respect to the portion of the deficiency attributable to cost of goods sold, it is necessary to determine how to allocate that portion of the deficiency between Javier Gaitan and Monica Gaitan. Section 6015(d)(1) provides:

> The portion of any deficiency on a joint return allocated to an individual shall be the amount which bears the same ratio to such deficiency as the net amount of items taken into account in computing the deficiency and allocable to the individual under paragraph (3) bears to the net amount of all items taken into account in computing the deficiency.

Section 6015(d)(3)(A) in turn sets forth a general rule that "any item giving rise to a deficiency on a joint return shall be allocated to individuals filing the return in the same manner as it would have been allocated if the individuals had filed separate returns for the taxable year." A regulation

interpreting section 6015(d)(3)(A) provides that erroneous items of business income and erroneous business deductions are allocated in accordance with each spouse's interest in the business. 26 C.F.R. sec. 1.6015-3(d)(2)(iii) and (iv).

The clothing-export business was jointly owned and operated by Javier Gaitan and Monica Gaitan. What is unclear is the relative fractions of the business that were owned by Javier Gaitan and Monica Gaitan. When the relative fractions of a jointly owned business are unclear, the regulation directs that erroneous items of business income and erroneous business deductions are generally allocated 50 percent to each spouse. Id. We therefore determine that the amount reported as cost of goods sold for the clothing-export business is allocated to each spouse 50-50 for purposes of determining the portion of the deficiency allocable to Javier Gaitan under section 6015(c)(1).

c.    Section 6015(f)

In accord with the statutory provision that relief is to be granted under section 6015(f) following "procedures prescribed by the Secretary," the IRS has issued revenue procedures to guide its employees in determining whether a taxpayer is entitled to relief from joint and several liability. See Rev. Proc. 2003-61, 2003-2 C.B. 296. Rev. Proc. 2003-61, supra, lists the factors that IRS employees should consider, and courts consider those factors when reviewing the IRS's denial of relief. See

<u>Washington v. Commissioner</u>, 120 T.C. 137, 147-152 (2003) (consulting Rev. Proc. 2000-15, 2000-1 C.B 447).  One such factor, which according to Rev. Proc. 2003-61, sec. 4.01(7), 2003-2 C.B. at 297, is a condition of section 6015(f) relief, is that "The income tax liability from which the requesting spouse seeks relief is attributable to an item of the individual with whom the requesting spouse filed the joint return".  (That condition is waived in four circumstances, none of which is applicable to Javier Gaitan's request for relief.)  We find that Javier Gaitan has not satisfied the condition specified in Rev. Proc. 2003-61, sec. 4.01(7)(a).  Both he and Monica Gaitan were involved in the clothing-export business.  Therefore, the items of income of the business are attributable to both spouses, not one spouse.  See <u>Golden v. Commissioner</u>, T.C. Memo. 2007-299 (holding that where the wife, a retired schoolteacher, and her husband, a lawyer, were both limited partners in a partnership and filed a joint return reporting their shares of partnership losses, the wife could not seek relief from the income-tax liability attributable to her investment in the partnership, which was an item attributable to "both spouses", not to the husband "alone"), affd. on other grounds 548 F.3d 487 (6th Cir. 2008).

We conclude that Javier Gaitan is not entitled to be relieved of joint liability for the deficiency under section

6015(f).  However, as explained before, Javier Gaitan's liability for the deficiency excludes the portion of the deficiency attributable to 50 percent of the cost of goods sold.

4.   Whether Monica Gaitan Is Entitled to Section 6015 Relief

In her brief, Monica Gaitan does not contend she is entitled to section 6015(b) or (c) relief.  She contends only that she is entitled to section 6015(f) relief.

Like Javier Gaitan, Monica Gaitan has failed to satisfy the condition specified in Rev. Proc. 2003-61, sec. 4.01(7)(a).  The clothing-export business is partially her business.  Therefore, the income from the business is an item attributable to both spouses, not Javier Gaitan alone, and Monica Gaitan is not entitled to section 6015(f) relief.

One of the exceptions to the condition specified in Rev. Proc. 2003-61, sec. 4.01(7)(a) is:  "If the requesting spouse establishes that he or she was the victim of abuse prior to the time the return was signed, and that, as a result of the prior abuse, the requesting spouse did not challenge the treatment of any items on the return for fear of the nonrequesting spouse's retaliation".  Rev. Proc. 2003-61, sec. 4.01(7)(d), 2003-2 C.B. at 298.  If this exception applies, the IRS will "consider granting equitable relief although the deficiency or underpayment may be attributable in part or in full to an item of the requesting spouse."  Although Monica Gaitan presented evidence

that Javier Gaitan physically harmed her, we do not believe that any physical abuse suffered by her contributed to the way in which the couple handled the tax return.

Monica Gaitan's failure to satisfy the condition specified in Rev. Proc. 2003-61, sec. 4.01(7) means that she does not qualify for section 6015(f) relief. See Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298 (setting forth circumstances under which the IRS will ordinarily grant equitable relief under section 6015(f), but only from the liability reported on the tax return); id. sec. 4.03 (setting forth factors for determining whether to grant equitable relief, but only for taxpayers who meet the threshold conditions of Rev. Proc. 2003-61, sec. 4.01). Because Monica Gaitan is not entitled to section 6015(f) relief, she is liable for the deficiency in income tax for 2006. Although for purposes of calculating the extent of Javier Gaitan's liability under section 6015(c) we held that the clothing-export business was jointly owned and that the reported amount of cost of goods sold should be split 50-50 between the Gaitans, these holdings have no effect on Monica Gaitan's liability. She did not contend that she qualified for section 6015(c) relief.

5. The Accuracy-Related Penalty

The accuracy-related penalty imposed by section 6662(a) and (b)(1) and (2) is equal to 20 percent of the portion of an underpayment attributable to (1) negligence or (2) any

substantial understatement of income tax.  No penalty is imposed to the extent there was reasonable cause for the underpayment and the taxpayer acted in good faith.  Sec. 6664(c)(1).  As to whether the taxpayer has a defense to the penalty, such as the reasonable cause-good faith exception, the taxpayer bears the burden of production and burden of persuasion.  Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  For other issues underlying the taxpayer's liability for the penalty, the IRS has the burden of production, sec. 7491(c); Higbee v. Commissioner, supra at 446, and the taxpayer has the burden of proof, Higbee v. Commissioner, supra at 447.

We conclude that the underpayment of tax on the 2006 tax return was the result of negligence.  Negligence includes a failure to make a reasonable attempt to comply with internal revenue laws or to exercise ordinary and reasonable care in preparing a tax return.  See sec. 6662(c); 26 C.F.R. sec. 1.6662-3(b)(1).  Negligence also includes the failure to keep adequate books and records or substantiate items properly.  See 26 C.F.R. sec. 1.6662-3(b)(1).  The Gaitans did not maintain adequate records of their clothing-export business.  We conclude that the deficiency is attributable to their negligence.

A taxpayer who asserts that reliance on a tax professional constituted reasonable cause must prove that the taxpayer provided the adviser necessary and accurate information.

Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221, 234 (3d Cir. 2002).  The Gaitans failed to establish that Monica Gaitan disclosed to Pina the necessary information about the purchases of clothing, including whether the purchases were made for personal use.  Therefore, the reasonable cause exception is unavailable.

Given the foregoing,

Decision will be entered under Rule 155 in docket No. 19090-09.

Decision will be entered for respondent in docket No. 21254-09.