T.C. Summary Opinion 2021-14

UNITED STATES TAX COURT

MARIA CLAUDIA GINOS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6147-17S.                          Filed May 19, 2021.

<u>Erin H. Stearns</u>, <u>Samantha A. Galvin</u>, and Haley K. Mills (student), for

petitioner.

<u>Michael T. Garrett</u>, <u>Gretchen W. Altenburger</u>, and <u>Matthew A. Houtsma</u>, for

respondent.

SUMMARY OPINION

CARLUZZO, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to

the provisions of section 7463[1] of the Internal Revenue Code in effect when the

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue
(continued...)

petition was filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

The issue for decision is whether petitioner qualifies for relief under section 6015(f) from her outstanding 2008 Federal income tax liability.

Background

Some of the facts have been stipulated and are so found. Petitioner lived in Colorado when the petition was filed.

Years before the year in issue, petitioner met Ronald Leon in Bogota, Colombia. She was a citizen and resident there; he lived in California and was in Bogota for business reasons. She later moved to California where they were married in 1999 and where they were divorced in 2012. After they were married, they purchased a house in California (marital residence). Later, petitioner's two daughters moved in with them. Her daughters continued to live with Mr. Leon even after petitioner had moved out.

While married, petitioner and Mr. Leon routinely elected to file joint Federal income tax returns, and they did so for 2008. The income reported on

---

[1](...continued)
Code of 1986, as amended and in effect for the relevant period. Rule references are to the Tax Court Rules of Practice and Procedure.

their joint 2008 Federal income tax return was attributable to Mr. Leon's

construction business (business) started at least in part with money borrowed or

gifted from petitioner's grandmother. Otherwise, petitioner had no obligation to

file a Federal income tax return for that year. Although she was not being paid,

petitioner is shown in public records as an officer of the business, and she was

active in the business in many ways including recordkeeping and other

administrative duties, as well as performing physical labor.[2]

Mr. Leon was unable to obtain the credit he needed in order to operate the

business. According to petitioner, this is because before their marriage, he

initiated a bankruptcy proceeding in order to avoid paying Federal income tax

liabilities from previous years. Because of Mr. Leon's poor credit, petitioner

opened at least one credit card account in her name that he used for business

purposes.

Taking into account the taxable income reported on the return, their joint

and several income tax liability for that year totaled $22,611. Only some of that

liability was satisfied by prepayments. The return shows $18,737 as the amount

due (tax due), but none of it was paid with the return. Of the total amount of tax

_____

[2]In 2006 petitioner enrolled in an interior design program and was awarded an associate's degree in interior design in 2008. She provided some decorating services to the business.

shown on the return, $6,146 consisted of the income tax imposed by section 1, and $16,465 consisted of the tax imposed by section 1401, the tax on net earnings from self-employment.[3]

A paid income tax return preparer prepared the return. As was petitioner's practice with respect to their joint Federal income tax returns filed for other years, she assembled the information necessary and provided it to the return preparer. Petitioner knew that the return showed the tax due when she signed it and submitted it to the Internal Revenue Service (IRS).

Nothing in the record shows that petitioner and Mr. Leon discussed the tax due when the return was filed. According to petitioner, however, during 2011 while their divorce proceeding was pending, Mr. Leon assured her that he would pay the tax due if she did not contest the divorce. Petitioner held up her end of the bargain. She defaulted in the divorce proceeding and was awarded neither property nor spousal support of any kind in the final divorce decree.[4] If Mr. Leon,

---

[3]Technically, the tax imposed by sec. 1401 is an income tax, but the tax applies only to net earnings from self-employment. See sec. 1402. Both parties are well represented in this case, but neither focused on this distinction. We will follow their lead and proceed as though the distinction need not be taken into account in connection with the relief petitioner seeks in this proceeding.

[4]Substantially all of the marital assets were awarded to Mr. Leon, including the business, the marital residence, home furnishings, and motor vehicles.

in fact, did make such a promise, then he did not keep it; he has not paid the tax due. We note that nothing in their separation agreement or divorce decree refers to the tax due.

In connection with their divorce, on September 7, 2011, petitioner executed a quitclaim deed conveying her interest in the marital residence to Mr. Leon. At the same time and even though they were going through divorce proceedings, petitioner designated Mr. Leon as her power of attorney to handle real property transactions and tax matters.

Starting in 2010 and continuing into 2011, petitioner was employed by a nonprofit organization. Her salary was $45,000 per year. Although still married to Mr. Leon, she filed a separate 2011 Federal income tax return, but as relevant here, she failed to include the cancellation of indebtedness income realized from a debt discharged by one of her creditors. She has been assessed but has not paid the deficiency in income tax that resulted from that failure. According to petitioner, the discharged debt related to the business.

In 2012 petitioner moved to England and began working for a different nonprofit organization that provided medical and surgical care for underprivileged children. After that job ended, petitioner remained in England until August 10, 2013, when she moved back to California.

At some point during 2013 petitioner received a $10,000 gift from her mother. Shortly after returning to California she met Milton Ginos. They married on July 29, 2014. In 2016 they moved from California to Colorado. On November 18, 2016, petitioner and Mr. Ginos purchased a house (Colorado house). Although the Colorado house was titled in both names as joint tenants, Mr. Ginos provided the funds for the purchase.

As of the close of 2015 a significant amount of the tax due remained unpaid. That being so, the refund claimed on their joint 2015 Federal income tax return was applied against that tax.

Petitioner was not employed when she met and married Mr. Ginos or, as relevant here, at anytime afterwards. Since they married, Mr. Ginos has supported her financially. We see no need to provide the detail of his financial situation. Suffice it to note that he was financially comfortable. Mr. Ginos paid all of petitioner's living expenses and from time to time made deposits into one of her bank accounts for her to spend as she saw fit.

Petitioner maintained at least two bank accounts. As of March 2018 the balances in the accounts totaled slightly more than $3,000. For the most part, the balances represented amounts petitioner saved from money given to her by Mr. Ginos. Petitioner used the $10,000 gift from her mother to open a joint brokerage

account with Mr. Ginos, who managed it. He invested the $10,000 mostly in stock; as of April 2018, the value of the stock portfolio held in the brokerage account was approximately $4,000.

On September 16, 2015, respondent received petitioner's Form 8857, Request for Innocent Spouse Relief (the form), requesting relief from joint and several liability for 2008 and 2011.[5] On the form petitioner: (1) reported that she had no assets, no income, and no expenses; (2) indicated that when the return was filed she and Mr. Leon were having financial problems and were unable to pay some of their bills; and (3) claimed that she was a victim of spousal abuse during her marriage with Mr. Leon. In a letter dated September 10, 2015, attached to the form, petitioner explained that in 2008 "the stock market crashed and it became very difficult to fulfill various financial obligations."

In response to a letter dated October 1, 2015, from the IRS requesting additional financial information, petitioner submitted an updated financial statement showing monthly income of $717 and expenses of $3,150. Apparently Mr. Ginos assisted petitioner in drafting the response.

---

[5] By order dated June 8, 2017, so much of this case as relates to 2011 was dismissed for lack of jurisdiction.

Discussion

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making this election, each spouse is responsible for the accuracy of the items shown on the joint return, and each spouse is jointly and severally liable for the entire amount of the income tax liability reported on the joint return. Sec. 6013(d)(3); see Butler v. Commissioner, 114 T.C. 276, 282 (2000).

Section 6015 provides various ways in which a spouse can be relieved of the joint and several income tax liability that results from the filing of a joint return--commonly referred to as "innocent spouse relief". If, as here, the tax due arises from an underpayment of tax, such relief is available only under section 6015(f). Pursuant to that section, the Commissioner may grant equitable relief from joint and several liability if "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)". Sec. 6015(f)(1)(A).

Petitioner, as the requesting spouse, bears the burden of proving that she is entitled to relief under section 6015(f). See Rule 142(a); see also Porter v. Commissioner, 132 T.C. 203, 210 (2009); Boyle v. Commissioner, T.C. Memo. 2016-87. The Court applies a de novo scope and standard of review in deciding

whether a taxpayer is entitled to relief under section 6015(f). Sec. 6015(e)(7);[6] Porter v. Commissioner, 132 T.C. at 210.

The Commissioner has outlined procedures for determining whether a requesting spouse qualifies for equitable relief under section 6015(f) in Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. 397, 399-400. Although the Court considers those procedures when reviewing the Commissioner's denial of section 6015(f) relief in cases such as this one, we are not bound by them; our determination ultimately rests on an evaluation of all the facts and circumstances. See Sleeth v. Commissioner, 991 F.3d 1201, 1205 (11th Cir. 2021), aff'g T.C. Memo. 2019-138; Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Boyle v. Commissioner, T.C. Memo. 2016-87; Williams v. Commissioner, T.C. Memo. 2015-198; Sriram v. Commissioner, T.C. Memo. 2012-91.

Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399, lists seven threshold conditions, all of which a spouse must meet to qualify for relief under section 6015(f). Respondent concedes that petitioner meets these qualifying conditions.

According to Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400, if the threshold requirements have been satisfied, then the Commissioner considers whether the requesting spouse qualifies for streamlined relief. The requesting

---

[6]As in effect when the petition was filed.

spouse is eligible for streamlined relief under Rev. Proc. 2013-34, sec. 4.02, only in cases in which that spouse establishes that: (1) on the date the IRS makes its determination, the requesting spouse, as relevant here, is no longer married to, or is legally separated from, the nonrequesting spouse; (2) the requesting spouse will suffer economic hardship if relief is not granted; and (3) on the date the joint return was filed, the requesting spouse did not know or have reason to know the nonrequesting spouse would not or could not pay the underpayment of the tax reported on the joint return. Respondent concedes that petitioner meets the first qualifying condition for streamlined relief. According to petitioner, all three conditions have been satisfied. According to respondent, petitioner is not entitled to streamlined relief if only because she has failed to satisfy the second requirement, that is, that she would suffer economic hardship if relief is not granted.

Economic hardship, as defined in Rev. Proc. 2013-43, sec. 4.03(2)(b), 2013-43 I.R.B. at 401, results if satisfaction of the tax liability, in whole or in part, would result in the requesting spouse's being unable to meet his or her reasonable basic living expenses.

> Whether the requesting spouse will suffer economic hardship is determined based on rules similar to those provided in Treas. Reg. § 301.6343-1(b)(4), and the Service will take into consideration a

requesting spouse's current income and expenses and the requesting spouse's assets. In determining the requesting spouse's reasonable basic living expenses, the Service will consider whether the requesting spouse shares expenses or has expenses paid by another individual (such as a family member, including a current spouse). * * * [Id.]

According to petitioner, she has "limited assets" and "no income" that could be used to satisfy the tax due, or any portion of it. That might be so, but with limited assets and no income, she has little exposure to forced collection efforts available to respondent. Furthermore, because she has been supported by Mr. Ginos, who has paid all of her living expenses, basic and otherwise, we wonder what financial hardship she faces if she remains obligated for the tax due. We agree with respondent that petitioner does not qualify for streamlined relief if only because she has failed to show she would suffer economic hardship if she were not relieved of liability from the tax due.

If, as in this case, a requesting spouse meets the threshold conditions for section 6015 relief but fails to qualify for streamlined relief, then the Commissioner will take into account the following nonexclusive list of factors set forth in Rev. Proc. 2013-34, sec. 4.03, 2013-43 I.R.B. at 400-403, in determining whether to grant relief: (1) whether the requesting spouse is separated or divorced from the nonrequesting spouse; (2) whether the requesting spouse will suffer

economic hardship if relief is not granted; (3) whether on the date the joint return was filed the requesting spouse did not know and had no reason to know that the nonrequesting spouse would not or could not pay the tax liability; (4) whether the requesting or nonrequesting spouse has a legal obligation to pay the tax liability pursuant to a decree of divorce or other agreement; (5) whether the requesting spouse received a significant benefit from the unpaid income tax liability; and (6) whether the requesting spouse has made a good-faith effort to comply with the Federal income tax laws for the taxable years following the taxable year(s) to which the request for relief relates. Two additional factors that the Commissioner may consider in favor of granting relief are whether: (1) the nonrequesting spouse abused the requesting spouse and (2) the requesting spouse was in poor mental or physical health when the joint return was filed or when the requesting spouse requested relief. See id. sec. 4.03(2)(c)(iv), (g), 2013-43 I.R.B. at 402, 403.[7]

Respondent, in denying petitioner section 6015 relief, considered each factor, found some to weigh in favor of relief, some to be neutral, and others to weigh against relief. Needless to say, petitioner's scorecard is marked differently.

---

[7]Rev. Proc. 2013-43, sec. 3.01, 2013-43 I.R.B. 397, 398, recognizes that the issue of abuse can be relevant to the analysis of various factors and can negate the presence of certain factors. The abuse complained of and experienced by petitioner is given little weight in our analysis. After all, petitioner allowed her daughters to remain living with Mr. Leon after she moved out.

Our review follows. We keep in mind that we are not bound to consider, or limited to, the list of factors. Furthermore, we proceed as though no one factor, if considered, is determinative, and relief or denial of relief is not a simple mathematical exercise of counting those factors considered to favor relief against those factors that do not.

1. Marital Status

If the requesting spouse is no longer married to the nonrequesting spouse as of the date that the IRS makes its determination, this factor weighs in favor of relief. Rev. Proc. 2013-43, sec. 4.03(2)(a), 2013-43 I.R.B. at 400. Petitioner and Mr. Leon were divorced before the IRS made its determination denying petitioner spousal relief. This factor weighs in favor of relief.

2. Economic Hardship

As discussed above, petitioner has failed to establish that denying her spousal relief will cause her to suffer economic hardship. Under Rev. Proc. 2013-34, sec. 4.03(2)(b), the absence of economic hardship is a neutral factor. Nonetheless, respondent, relying on Hale v. Commissioner, T.C. Memo. 2018-93, argues that the economic hardship factor should weigh against relief. We find the facts in Hale to be distinguishable from the facts before us and, consistently with Rev. Proc. 2013-43, sec. 4.03(2)(b), consider this factor neutral.

3. Knowledge or Reason To Know

In the case of an underpayment of tax due, this factor turns on whether, as of the date the return was filed, the requesting spouse knew or had reason to know that the nonrequesting spouse would not or could not pay the tax at that time or within a reasonable time after the filing of the return. Rev. Proc. 2013-34, sec. 4.03(2)(c)(ii), 2013-43 I.R.B. at 401. This factor will weigh against relief if, on the basis of the facts and circumstances of the case, it was not reasonable for the requesting spouse to believe that the nonrequesting spouse would or could pay the tax liability shown on the return. Id.

When petitioner signed and submitted the return to the IRS, she acknowledged that she was aware that the tax due was not paid, but she now argues that it was reasonable for her to believe that Mr. Leon would pay it because of their financial situation/income during the relevant period and Mr. Leon's history of satisfying his Federal income tax liabilities. The evidence does not support her position.

In statements made in her September 10, 2015, letter, petitioner explained that the stock market crash in 2008 made it "very difficult to fulfill various financial obligations". She also had access to her and Mr. Leon's business and personal financial records. She was aware that Mr. Leon had poor credit and used

Federal bankruptcy proceedings to avoid paying Federal income tax liabilities for periods before they were married. See Pullins v. Commissioner, 136 T.C. at 444-445. We conclude that the financial difficulties petitioner described in her letter should have put her on notice when the return was filed that Mr. Leon would not or could not pay the tax due. See Stolkin v. Commissioner, T.C. Memo. 2008-211 (holding that the requesting spouse's knowledge of the couple's financial difficulties deprives the requesting spouse of reason to believe that the nonrequesting spouse will pay the tax liability).

Petitioner further contends that Mr. Leon verbally and emotionally abused her during their marriage, negating this factor. See Rev. Proc. 2013-34, sec. 3.01, 2013-43 I.R.B. at 398. Spousal abuse can negate an otherwise negative factor "[i]f the requesting spouse establishes that * * * [the spouse] was the victim of abuse prior to the time the return was filed, and that, as a result of prior abuse, * * * was not able to question the payment of any balance due reported on the return, for fear of the nonrequesting spouse's retaliation". Id. sec. 4.01(7)(d), 2013-43 I.R.B. at 400.

There is enough evidence in the record to conclude that Mr. Leon belittled and embarrassed petitioner in front of their friends. We are not convinced, however, that Mr. Leon exercised such control over petitioner as would have

prevented her from questioning the payment of the tax due, and we therefore find that whatever abuse she suffered need not be taken into account. See Deihl v. Commissioner, T.C. Memo. 2012-176, aff'd, 603 F. App'x 527 (9th Cir. 2015); Gaitan v. Commissioner, T.C. Memo. 2012-3; see also Rev. Proc. 2013-34, sec. 4.01(7)(d). Therefore, this factor weighs against relief.

### 4. Legal Obligation

This factor will weigh in favor of relief if the nonrequesting spouse has the sole legal obligation to pay the outstanding tax liability pursuant to a divorce decree or other legally binding agreement. Rev. Proc. 2013-34, sec. 4.03(2)(d), 2013-43 I.R.B at 402.

The divorce decree does not address who is responsible for paying the tax due. Respondent argues and petitioner concedes that this factor is neutral. We agree.

### 5. Significant Benefit

This factor calls for an evaluation of whether petitioner received a significant benefit, beyond normal support, such as the "benefits of a lavish lifestyle", from the underpayment of tax. See id. sec. 4.03(2)(e), 2013-43 I.R.B. at 402; see also sec. 1.6015-2(d), Income Tax Regs. If so, this factor will weigh against relief. Normal support is measured by the circumstances of the particular

parties. <u>Porter v. Commissioner</u>, 132 T.C. at 212. On the other hand, "[i]f only the nonrequesting spouse significantly benefitted from the unpaid tax * * *, and the requesting spouse had little or no benefit, or the nonrequesting spouse enjoyed the benefit to the requesting spouse's detriment, this factor will weigh in favor of relief." Rev. Proc. 2013-34, sec. 4.03(2)(e).

Respondent concedes that petitioner did not enjoy the benefits of a lavish lifestyle as a result of the underpayment of the underlying liability. According to respondent, this factor is neutral.

Because of a motorcycle Mr. Leon purchased during the relevant period, petitioner suggests that he significantly benefitted from the underpayment of tax and therefore the factor should weigh in support of relief. We hardly consider Mr. Leon's purchase of the motorcycle to be extravagant and note from the divorce decree that at least a portion of the purchase price was financed. We find this factor is neutral.

## 6. Compliance With Tax Laws

If the requesting spouse is in compliance with the income tax laws for taxable years following the taxable years to which the request for relief relates, this factor will weigh in favor of relief. <u>Id.</u> sec. 4.03(2)(f)(i), 2013-43 I.R.B.

at 402. If the requesting spouse is not in compliance, then this factor will weigh against relief. Id.

Petitioner filed a separate tax return for 2011, but she failed to report the cancellation of indebtedness income she realized upon the debt discharged by a credit card issuer. See Wang v. Commissioner, T.C. Memo. 2014-206 (holding that unreported items indicate a lack of compliance for purposes of this factor despite claims that the amount may ultimately have no impact on a taxpayer's Federal income tax liability). Consequently, petitioner has an outstanding Federal income tax liability for 2011. According to petitioner, she has made a good-faith effort to comply with income tax laws following 2008 because she plans to pay the outstanding Federal income tax liability for 2011. Petitioner's intent, good faith notwithstanding, to come into compliance with Federal tax laws is the not the same as actually being in compliance. See Pugsley v. Commissioner, T.C. Memo. 2010-255. We note that upon receiving the gift from her mother in 2013 she opted to open a brokerage account with the money rather than pay her then-outstanding 2011 Federal income tax liability or any portion of it. We find that this factor weighs against relief.

7. <u>Mental or Physical Health</u>

This factor will weigh in favor of relief if the requesting spouse was in poor mental or physical health when the relevant return was filed or when she requested relief. Rev. Proc. 2013-34, sec. 4.03(2)(g), 2013-43 I.R.B. at 403. If the requesting spouse was in neither poor physical nor poor mental health, then this factor is neutral. <u>Id.</u>

Petitioner testified that her mental health started to deteriorate as a result of her being "embarrassed" that she brought her Federal income tax issues into her marriage with Mr. Ginos and that she continued to suffer from poor mental health from that time through the time of trial. She further testified that her poor mental health resulted in certain physical symptoms such as nausea and vomiting and that in an effort to address her health she sought professional counseling. No doubt the ongoing consequences of her marriage to, and divorce from, Mr. Leon caused her stress in her current marriage, but other than the counseling, any ill effects she suffered from the stress apparently were not sufficient enough for her to seek medical attention for any physical health issues that resulted from the stress. We fail to see how the mental condition she described might have affected her ability to meet her Federal tax obligations. See <u>Banderas v. Commissioner</u>, T.C. Memo. 2007-129. Therefore, we find that this factor is neutral.

## Conclusion

After taking into account the foregoing factors and weighing all of the facts and circumstances of this case, we conclude that it would not be inequitable to deny petitioner spousal relief for the year in issue.  It follows that petitioner is not entitled to section 6015(f), and we so hold.

To reflect the foregoing,

Decision will be entered for

respondent.