T.C. Memo. 2014-206

UNITED STATES TAX COURT

IRENE K. WANG, Petitioner, AND STEPHEN TSAI, Intervenor v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23344-11.                    Filed October 6, 2014.

Frank Agostino, Adam B. Reich, and Lawrence A. Sannicandro, for
petitioner.

Stephen Tsai, pro se.

Jayne Michele Wessels and Ina Susan Weiner, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, Judge: Petitioner seeks review pursuant to section 6015(e)(1) of

respondent's determination that she is not eligible for relief from joint and several

liability for tax years 2007 and 2008 with respect to the Federal income tax returns

[*2] she jointly filed with intervenor, her spouse. We consider whether petitioner is eligible for relief under section 6015(b) and (f). Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Petitioner and intervenor resided in Bridgewater, New Jersey, at the time she filed the petition.

Petitioner and intervenor were married in November 1992. At the time of trial petitioner and intervenor were still married and living in the same house. Petitioner and intervenor had three children, aged 17, 11, and 3, at the time of trial. Petitioner stated that her youngest child, A.T.,[1] has developmental delays that may be early indicators of autism.

Petitioner was born and raised in Taiwan, where she earned a bachelor's degree in chemical engineering from Tong Kong University. In 1990 petitioner immigrated to the United States to attend Stevens Institute of Technology, where she earned a master's degree in materials science in 1992. Petitioner worked as a

---

[1]The Court refers to minor children by their initials. See Rule 27(a)(3).

[*3] chemical engineer or chemist from 1992 through 1997 at various laboratories and pharmaceutical companies.  After her first child was born, petitioner ceased working outside the home, although she worked at a shoe company for part of 2011.  Additionally, during the years at issue and as of the time of trial, petitioner volunteered at a local "Chinese school" on Saturdays for which she received $1,000 per year.

Intervenor earned a bachelor's degree from Princeton University in 1987 and a juris doctor degree from the University of Michigan Law School in 1990.  Intervenor practiced law as an attorney from 1990 until his disbarment in 2010, discussed in further detail below.  At the time of trial intervenor was employed as an instructor at the New Jersey Workforce Learning Link, an adult learning center, for which he earns an annual salary of $40,000.

As a result of intervenor's schooling, he had student loans in his name at the time petitioner and intervenor married.  Early in their marriage petitioner assisted intervenor in paying off his student loans in full.  From 1992 to 1997 intervenor did not have a steady income, and checks written from their joint account to pay bills were in reality sourced solely from petitioner's earnings.

**[\*4]** I.     <u>Notices of Deficiency, Intervenor's Bankruptcy, and Petitioner and Intervenor's Petition to this Court</u>

Petitioner and intervenor filed joint income tax returns for 2007 and 2008 and have continued to file jointly since 2008. Petitioner and intervenor both allege that petitioner had no involvement in the preparation of their 2007 and 2008 tax returns. Petitioner typically turned over all receipts, Forms W-2, Wage and Tax Statement, and any other relevant documentation to intervenor, who would then prepare their personal income tax returns. Petitioner did not sign the return for 2007, and it is unclear from the record whether she reviewed the return before filing although she testified that she saw the 2007 return and concedes she filed a joint return with intervenor for both 2007 and 2008.[2] Petitioner saw the 2008 return before it was filed. Intervenor's habit was to show the returns to petitioner at 11 p.m. or 11:30 p.m. on the eve of the filing deadline each year before taking the returns to the post office to be timely filed, and as a result, petitioner did not typically have a chance to review the returns.

Respondent commenced an audit of petitioner and intervenor's 2007 tax return in June 2008. On October 5, 2009, respondent issued a notice of deficiency to petitioner and intervenor for their 2007 tax year. Respondent determined a

---

[2]The parties have stipulated that the 2007 return was a valid joint return.

**[\*5]** deficiency in tax of $20,246 and accuracy-related penalty of $4,049 under section 6662(a).

Respondent commenced an audit of petitioner and intervenor's 2008 tax return in September 2009. On January 4, 2010, respondent issued a notice of deficiency to petitioner and intervenor for their 2008 tax year. Respondent determined a deficiency in tax of $16,087 and an accuracy-related penalty of $3,244 under section 6662(a). The deficiencies for both years were attributable to disallowed deductions.

On January 4, 2010, the same day the notice of deficiency for 2008 was issued, intervenor filed a petition with the U.S. Bankruptcy Court for the District of New Jersey under 11 U.S.C. chapter 7. Tsai v. Commissioner (In re Tsai), No. 10-10083 (Bankr. D. N.J. filed Jan 4, 2010). On May 25, 2010, intervenor was granted a discharge in his bankruptcy case. Pursuant to section 6213, the 90-day period for filing a valid petition in this Court was suspended with respect to intervenor during the pendency of his bankruptcy case.

On August 23, 2010, petitioner and intervenor filed a petition in this Court in response to the notices of deficiency for tax years 2007 and 2008. On November 16, 2010, petitioner and intervenor's petition was dismissed with respect to tax year 2007 for lack of jurisdiction since the petition was not timely

**[\*6]** filed. On November 18, 2010, petitioner was dismissed from the petition with respect to tax year 2008 for lack of jurisdiction because the petition was not timely filed with respect to her since she was not party to intervenor's bankruptcy case and thus received no suspension of time for filing a petition. Pursuant to an agreement between intervenor and respondent as recited in a stipulated decision of the Court entered on April 10, 2013, at docket No. 18738-10S, intervenor was liable for a deficiency in tax of $10,215 and an accuracy-related penalty pursuant to section 6662(a) of $2,043 for tax year 2008.

On May 4, 2011, petitioner and intervenor filed a complaint in an adversary proceeding, Adv. Pro. No. 11-1762, in intervenor's bankruptcy case to have their joint income tax liabilities for tax years 2007 and 2008 determined in that forum. In its decision on August 21, 2012, the bankruptcy court granted summary judgment to the Commissioner with respect to several deductions for improper business expenses of intervenor's law practice, including wages intervenor paid to himself and to petitioner,[3] certain contract labor wages paid to members of intervenor's family, gifts, and nonmortgage interest. Tsai v. Commissioner (In re

---

[3]In denying deductions for wages paid to petitioner, the bankruptcy court noted the inconsistency in petitioner and intervenor's claim that petitioner had no involvement in the law practice despite claiming wage deductions for labor performed by petitioner. Tsai v. Commissioner (In re Tsai), No. 10083, 2012 WL 4762013 (Bankr. D. N.J. Aug. 21, 2012).

[*7] <u>Tsai)</u>, No. 10083, 2012 WL 4762013 (Bankr. D. N.J. Aug. 21, 2012). The bankruptcy court denied summary judgment with respect to certain other expenses, including automobile expenses. <u>Id.</u> On January 22, 2013, the bankruptcy court issued a final order stating that the joint tax liabilities of petitioner and intervenor were $8,975 and $10,215 for tax years 2007 and 2008, respectively, exclusive of interest. Additionally, the bankruptcy court determined accuracy-related penalties under section 6662(a) of $1,795 and $2,043 for tax years 2007 and 2008, respectively, exclusive of interest.

Pursuant to agreement between intervenor and respondent as recited in a stipulated decision of the Court entered on April 10, 2013, intervenor was liable for a deficiency in tax of $10,215 and an accuracy-related penalty pursuant to section 6662(a) of $2,043 for tax year 2008.

II.    2008 State Income Tax Refund and 2010 Cancellation of Debt

Petitioner and intervenor stipulated that, in 2009, they received a State income tax refund related to their 2008 State income tax that they failed to report on their 2009 jointly filed tax return. Petitioner and intervenor also stipulated that they had cancellation of indebtedness income that they failed to report on their 2010 jointly filed tax return.

**[*8]** III.  Intervenor's Law Practice and Disbarment

During 2007 and 2008 intervenor operated a law firm in New Jersey. The record is unclear as to the name and ownership of the firm, but intervenor was the only attorney at this firm. Intervenor employed a part-time clerk, Janet Dennis, as his sole employee. Janet Dennis did not speak Chinese, but petitioner does. Petitioner assisted intervenor's law practice with various tasks during 2007 and 2008, including placing Chinese-language advertisements, answering the telephone, drafting wills for clients, and soliciting business for the firm. Intervenor would occasionally "give" petitioner a paycheck for these activities but claimed at trial that petitioner's duties were very limited. However, during a deposition taken during intervenor's bankruptcy case (bankruptcy deposition), he testified that petitioner was his "office manager". Additionally, the paychecks that intervenor "gave" to petitioner far exceeded the amounts he paid himself. For example, in the fourth quarter of 2008, intervenor paid himself only $500 but paid petitioner $2,800.

Residential utility bills and personal credit card statements were delivered to intervenor's office instead of being sent to petitioner and intervenor's home address. Intervenor used the law firm's accounts to pay his personal expenses and those of his family, including expenses attributable to petitioner. At trial

**[*9]** intervenor admitted that many of the disallowed deductions on the 2007 and 2008 tax returns were for personal expenses rather than expenses related to the law firm. For example, intervenor deducted the costs of restaurant meals, car loans, and personal credit card charges, all of which were paid from the law firm's business accounts.

In late 2009 the New Jersey Office of Attorney Ethics began investigating intervenor. This investigation resulted in intervenor's disbarment by the New Jersey State Bar in October 2010 for violations concerning his attorney trust account. The New York Supreme Court reciprocally disbarred intervenor in April 2011.

Intervenor testified at trial in this proceeding that he was disbarred for misappropriating client funds, which he attributed to poor bookkeeping. Officially, intervenor was disbarred for various violations of the New Jersey Rules of Professional Conduct (RPC), including gross neglect (RPC 1.1(a)); lack of diligence (RPC 1.3); failure to safeguard funds (RPC 1.15(a)); failure to comply with the recordkeeping requirement under New Jersey Court Rule 1.21-6(d) (RPC 1.15(d)); conduct involving dishonesty, fraud, deceit, or misrepresentation (RPC 8.4(c)); recordkeeping violations under New Jersey Court Rule 1.21-6(d); and the principles regarding misuse of client funds in In re Wilson, 409 A.2d 1153 (N.J.

[*10] 1979), and In re Hollendonner, 504 A.2d 1174 (N.J. 1985). In re Tsai, 5 A.3d 161 (N.J. 2010). Petitioner's parents gave petitioner and intervenor $20,000 to pay attorney's fees related to intervenor's disbarment proceedings.

## IV. Transfer of the Residence

Petitioner and intervenor purchased a residence in New Jersey in 1998 (residence), titled jointly at the time of purchase. Petitioner and intervenor purchased the residence with the assistance of a loan of $50,000 from petitioner's parents. In December 2008 the residence was retitled solely in petitioner's name.

## V. Petitioner and Intervenor's Marriage

Petitioner is unhappy in her marriage to intervenor. Petitioner's Form 8857, Request for Innocent Spouse Relief, stated that she was not the victim of spousal abuse or domestic violence. Petitioner asks the Court to consider the state of her marriage in determining whether to grant her relief under section 6015. At various times in the trial and in petitioner's posttrial briefing, petitioner stated that she will divorce intervenor if she receives relief from their joint and several tax liabilities. Somewhat inconsistently, she claims she remains married to intervenor solely because of their children. Intervenor's notice of intervention states that he supports petitioner's request for relief under section 6015.

**[*11]**                                    OPINION

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election, each spouse is jointly and severally liable for the entire tax due for that year. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). In certain circumstances, however, a spouse who has filed a joint return may seek relief from joint and several liability under procedures set forth in section 6015. Sec. 6015(a).

Under section 6015(a), a spouse may seek relief from joint and several liability under subsection (b) or, if eligible, may allocate liability according to provisions set forth in subsection (c). If a taxpayer does not qualify for relief under either subsection (b) or (c), the taxpayer may seek equitable relief under subsection (f). The Secretary has discretion to grant equitable relief to a spouse who filed a joint return with an unpaid tax liability or a deficiency. Sec. 6015(f)(1); sec. 1.6015-4(a), Income Tax Regs.

I.    Burden of Proof

Except as otherwise provided in section 6015, the taxpayer bears the burden of proving that he or she is entitled to section 6015 relief. Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 Fed. Appx. 34 (6th Cir. 2004). Both the scope and standard of our review in cases requesting relief from

**[\*12]** joint and several income tax liability are de novo. <u>Porter v. Commissioner</u>, 132 T.C. 203, 210 (2009).[4]

Petitioner argues she is eligible for relief under section 6015(b) or, in the alternative, under section 6015(f). We first examine petitioner's argument regarding eligibility under section 6015(b).

## II.     Relief Under Section 6015(b)

Section 6015(b) requires a taxpayer seeking relief from joint and several liability to satisfy five conditions: (1) a joint return was filed for the taxable year, (2) there is an understatement of tax attributable to erroneous items of the taxpayer's spouse, (3) the taxpayer establishes that in signing the return, he or she did not know, and had no reason to know, that there was an understatement, (4) taking into account all facts and circumstances, it would be inequitable to hold the taxpayer liable for the deficiency in tax for such taxable year attributable to such understatement, and (5) the taxpayer timely elects relief under section 6015(b). These conditions are stated in the conjunctive, and the taxpayer must satisfy all five in order to be awarded relief. <u>See</u> <u>Alt v. Commissioner</u>, 119 T.C. at 313.

---

[4]Petitioner conceded in her pretrial memorandum that she bears the burden of proof with respect to proving entitlement to relief under sec. 6015. Petitioner first contested the burden of proof in her posttrial briefs. The Court does not generally consider issues raised for the first time on brief. <u>Cf., e.g.</u>, <u>Gibson v. Commissioner</u>, T.C. Memo. 2007-224, slip op. at 8 n.5.

[*13] Petitioner, intervenor, and respondent stipulated that petitioner and intervenor filed joint returns for the tax years at issue and timely elected relief. Accordingly, petitioner must also show that (1) the understatement of tax is attributable to erroneous items of intervenor, (2) petitioner did not know nor have reason to know of the understatement, and (3) it would be inequitable to hold her liable for the deficiency attributable to the understatement. See id.

A.    Section 6015(b)(1)(B)

A taxpayer must show that the understatement of tax is attributable to erroneous items of the nonrequesting spouse. Section 1.6015-1(h)(4), Income Tax Regs., provides: "An erroneous item is any item resulting in an understatement or deficiency in tax to the extent that such item is omitted from, or improperly reported (including improperly characterized) on an individual income tax return. * * * In addition, a deduction for an expense that is personal in nature that results in an understatement or deficiency in tax is an erroneous item of deduction." Generally, an erroneous item is attributed to the individual whose activities gave rise to the item. Sec. 1.6015-1(f)(1), Income Tax Regs.

In determining whether the erroneous item is attributable to the nonrequesting spouse, the Court has examined whether the requesting spouse actively and substantially participated in the activity that generated the income. In

[*14] Olson v. Commissioner, T.C. Memo. 2009-294, slip op. at 13, the Court held that the requesting spouse had participated in a business with respect to which income had gone unreported where she had performed such activities as "answering the phone, sending out mail, paying the help, handling the equipment, and working some of the jobs." See also Ishizaki v. Commissioner, T.C. Memo. 2001-318; Grubich v. Commissioner, T.C. Memo. 1993-194. In Gaitan v. Commissioner, T.C. Memo. 2012-3, the Court similarly found that the requesting spouse was involved in a business with respect to which disallowed deductions and costs of goods sold had been claimed where he had transported and mailed items for sale.

Like the requesting spouses in Olson and Gaitan, petitioner actively and substantially participated in a nonrequesting spouse's business. She assisted intervenor's business by answering the phone, drafting and placing Chinese-language advertisements, soliciting business for the firm, and drafting wills for clients. Petitioner attempts to distinguish Olson and Gaitan by arguing that, since the New Jersey Rules of Professional Conduct forbid ownership in a law firm by a nonlawyer, the Court may not treat her as intervenor's business partner. However, the Court looks not only to how ownership of an enterprise is nominally held but also to each spouse's level of participation in the activity giving rise to the

[*15] erroneous item. <u>Juell v. Commissioner</u>, T.C. Memo. 2007-219. Petitioner and intervenor both testified at trial as to the limited nature of petitioner's involvement with the law firm. The Court does not find their respective testimonies credible. Petitioner performed various duties at the firm, including answering the telephone when Chinese-speaking clients called, a task intervenor's assistant was unable to do. Additionally, petitioner was active in soliciting business for the firm by placing Chinese-language advertisements and soliciting business from friends. The fact that intervenor occasionally "gave" petitioner a paycheck that was larger than the amount he paid himself is evidence of her contribution to the overall operations of the law firm.

However, even if we were to find that petitioner was not an active participant in the law firm's business, she still would not have met her burden of proving that the erroneous items are solely attributable to intervenor. As stated in section 1.6015-1(h)(4), Income Tax Regs., deductions for personal expenses that result in a deficiency or an understatement of tax are erroneous items for purposes of section 6015(b)(1)(B). Many of the disallowed expenses on petitioner and intervenor's 2007 and 2008 tax returns were personal, including restaurant meals, car loans, and personal credit card charges. Petitioner has not shown that these personal items were solely attributable to intervenor. For example, in intervenor's

**[*16]** bankruptcy deposition he testified that several deductions related to petitioner and intervenor's restaurant meals because they discussed the law firm's business while dining out since he considered her to be his "office manager".

Petitioner argues that, since section 6015(b) allows for full or apportioned relief from joint and several liability, the erroneous items giving rise to an understatement of tax do not necessarily have to be solely attributable to the nonrequesting spouse. Petitioner misinterprets the relevant section regarding apportionment, section 6015(b)(2). Section 6015(b)(2) allows for apportionment for individuals who satisfy all components of subsection (b) except for subsection (b)(1)(C) to the extent the individual did not know or have reason to know of the full understatement. As we ultimately hold that petitioner fails to satisfy the requirements of subsection (b)(1)(B), (C), and (D), she does not qualify for apportionment of relief under subsection (b)(2). Accordingly, petitioner does not qualify for either full or apportioned relief under section 6015(b).[5]

---

[5]Petitioner attempts to support her interpretation of apportionment under sec. 6015(b) by referencing sec. 1.6015-3, Income Tax Regs. Sec. 1.6015-3(d)(2)(iv), Income Tax Regs., generally allocates erroneous deductions related to business expenses to the spouse who owned the business or investment. Accordingly, petitioner argues that the erroneous items pertaining to intervenor's law firm should be allocated solely to him. However, sec. 1.6015-3(d)(2)(iv), Income Tax Regs., pertains only to "individuals who are no longer married, are legally separated, or are not members of the same household." Since petitioner

(continued...)

**[*17]** B.      Section 6015(b)(1)(C)

Section 6015(b)(1)(C) requires the taxpayer to establish that in signing the return, he or she did not know, and had no reason to know, that there was an understatement.  The Court of Appeals for the Third Circuit, to which an appeal in this case would presumably lie, has declined to rule on the appropriate test for determining whether the taxpayer knew or had reason to know of the understatement in an erroneous deduction scenario.  Doyle v. Commissioner, 94 Fed. Appx. 949 (3d Cir. 2004), aff'g T.C. Memo. 2003-96.  In Doyle, the Court of Appeals for the Third Circuit discussed the difference between the knowledge-of-the-transaction test and the reasonably prudent person test.  Id.  Under the knowledge-of-the-transaction test, a taxpayer does not satisfy section 6015(b)(1)(C) if she knows or has reason to know of the transaction giving rise to the understatement at issue.  Id.  The Tax Court has applied the knowledge-of-the-transaction test to both erroneous deduction and omitted income cases.  See Jonson v. Commissioner, 118 T.C. 106, 115-116 (2002), aff'd, 353 F.3d 1181 (10th Cir. 2003).

---

[5](...continued)
and intervenor are legally married and not separated, sec. 1.6015-3, Income Tax Regs., has no application to the apportionment of erroneous items between them.

**[*18]** Beginning with Price v. Commissioner, 887 F.2d 959, 964-965 (9th Cir. 1989), several Courts of Appeals have applied the more lenient reasonably prudent person test to cases where the understatement originates from erroneous deductions. Jonson v. Commissioner, 118 T.C. at 115-116. Under the reasonably prudent person test, mere awareness of the transaction does not necessarily cause the taxpayer to fail to meet the requirements of section 6015(b)(1)(C); however, if the taxpayer had such knowledge of the facts underlying the claimed deductions that a reasonably prudent taxpayer in the taxpayer's position would question the legitimacy of the deductions, a duty of inquiry is triggered that, if not satisfied, causes the taxpayer to fail to meet the requirements of section 6015(b)(1)(C). Price v. Commissioner, 887 F.2d at 964-965 (citing Levin v. Commissioner, T.C. Memo. 1987-67, 53 T.C.M. (CCH) 6, 8-9 (1987)); Kellam v. Commissioner, T.C. Memo. 2013-186 (citing Resser v. Commissioner, 74 F.3d 1528, 1536 (7th Cir. 1996), rev'g T.C. Memo. 1994-241). Thus, even if a taxpayer is not explicitly aware of the understatement, he or she may nevertheless be "on notice" that an understatement exists and must inquire into the legitimacy of the deduction. Price v. Commissioner, 887 F.2d at 965.

In Doyle v. Commissioner, 94 Fed. Appx. 949, the Court of Appeals for the Third Circuit found that the taxpayer failed to satisfy either the knowledge-of-the-

[*19] transaction test or the reasonably prudent person test. The taxpayer in Doyle had participated in the activity giving rise to the erroneous deductions and therefore had knowledge of the transactions; likewise, because she did not discharge her duty to inquire into the legitimacy of the deductions, she also failed the more lenient reasonably prudent person test. Id. at 952. Because we believe that petitioner had reason to know of the understatements but did not satisfy her duty of inquiry, we conclude that petitioner is similarly situated to the taxpayer in Doyle and does not satisfy either the knowledge-of-the-transaction test or the reasonably prudent person test.

The Court considers various factors in determining whether a taxpayer knew or had reason to know of the understatement, including (i) his or her level of education, (ii) involvement in family business and/or financial affairs, (iii) any unusual or lavish unexplained increases in the family's standard of living or spending patterns, and (iv) the evasiveness and deceit of the nonrequesting spouse concerning family finances. Kellam v. Commissioner, at *8; see also Greer v. Commissioner, 595 F.3d 338, 346-347 (6th Cir. 2010) (citing Price v. Commissioner, 887 F.2d at 963 n.9), aff'g T.C. Memo. 2009-20; Garavaglia v. Commissioner, T.C. Memo. 2011-228.

**[*20]**      1.      Level of Education

Petitioner has obtained a high degree of education, earning both a bachelor's degree in chemical engineering and a master's degree in materials science.  Despite her education petitioner argues that her lack of formal knowledge or education with regard to tax or business matters supports her argument that she did not know or have reason to know of the understatement.  In many cases, the Court has decided this factor in favor of taxpayers who have a high degree of education but who lack education in business, accounting, or tax.  See, e.g., Crouse v. Commissioner, T.C. Memo. 2011-97 (finding that taxpayer had a bachelor's degree in telecommunications but did not have work experience or education in tax, financial, or accounting matters); Wiener v. Commissioner, T.C. Memo. 2008-230 (finding that taxpayer was a college graduate but lacked any tax, business, or accounting background).  But see Kellam v. Commissioner, T.C. Memo. 2013-186 (holding that taxpayer with a high school education and some college courses should be denied relief).  Generally, it is financial education, rather than the level of education, that matters for purposes of determining a taxpayer's eligibility for relief under section 6015(b)(1)(C).  Greer v. Commissioner, 595 F.3d 338.  Petitioner lacked a formal education in business but had attained significant business experience and knowledge through her work at

[*21] intervenor's law firm. Accordingly, on the basis of the record at hand, this factor weighs against petitioner.

### 2. Involvement in Business and Financial Affairs

Petitioner argues that her work for intervenor's law firm was very limited and that she did not have any control over the financial affairs of the office. However, petitioner's work at the firm was not insignificant. She drafted advertisements, solicited business for the firm, and assisted in day-to-day operations, such as answering the telephone. Intervenor stated in his bankruptcy deposition that petitioner was his "office manager".

Early in their marriage petitioner was very active in managing the family finances. She assisted intervenor in paying off his student loans early because she did not like carrying debt. Additionally, petitioner's income allowed petitioner and intervenor to obtain a mortgage for their residence. Petitioner's Form 8857 alleges that she has provided $489,336.22 to intervenor. Even though petitioner stopped working after the birth of her first child, there is nothing in the record to reflect that she lost all financial acumen thereafter. For example, petitioner and intervenor did not purchase their residence until 1998, after the birth of their first child. Petitioner also used funds from her IRA for various home improvement

[*22] projects in late 2013, ostensibly to prepare the residence for sale and stave off foreclosure.  Accordingly, this factor weighs against petitioner.

### 3. Increase in Standard of Living

Respondent concedes and the Court agrees that there is no evidence in the record to suggest that petitioner and intervenor increased their spending or standard of living.  This factor is neutral.

### 4. Evasiveness or Deceit by Intervenor

Petitioner and intervenor both testified that petitioner had no involvement in the family finances and that intervenor actively prevented petitioner from accessing financial records.  Petitioner and intervenor also testified that intervenor had sole control over the firm's financial records as well as the family's bank accounts.  Petitioner testified that intervenor was deceptive and controlling and severely limited her autonomy in financial matters and social situations.  For example, petitioner testified that intervenor spoke no more than 10 sentences to her at home and never communicated any of his concerns over his legal issues.  Petitioner testified that intervenor did not allow her to speak freely outside the home, even going so far as to monitor her conversations with friends.  Additionally, she testified that he forbade her from discussing their financial and legal troubles with anyone.  However, petitioner gave conflicting testimony on this

[*23] point, stating that she chose not to discuss family matters with friends because (i) she wished to bring business to intervenor's law firm and did not want to harm his reputation, and (ii) she believes "Chinese people" generally do not discuss family matters outside the home. Petitioner also testified that she told a college friend about her husband's disbarment and that this friend helped intervenor find his current employment.

Petitioner and intervenor's testimonies are not convincing. The record reflects that petitioner was involved in the daily operations of intervenor's law firm. Additionally, intervenor stated during his bankruptcy deposition that petitioner was his "office manager" and that he and petitioner "talk about office stuff all the time". Petitioner's testimony that she and intervenor discussed his legal troubles daily runs counter to her allegation that he rarely spoke to her. Despite intervenor's supposed deceit, petitioner testified that she is currently allowing him to handle the sale of their home and any transactions related to the alleged foreclosure.

Petitioner asks the Court to find that intervenor concealed financial information from her and that his domineering and controlling attitude prevented her from participating in household financial decisions. Petitioner's failure to ask questions of intervenor does not necessarily mean that intervenor was deceptive or

[*24] evasive. For example, petitioner testified that since she did not have any formal education with regard to finances and law, and since English is not her first language, she trusted intervenor to handle all of the family finances. Petitioner also testified that she preferred to "keep the peace" and therefore did not discuss politics and money with intervenor. As was the case with the taxpayer in Doyle v. Commissioner, 94 Fed. Appx. at 952, petitioner chose to play the "ostrich, hiding her head in the proverbial sand." The fact that petitioner trusted intervenor with financial decisions is insufficient to qualify her for relief under section 6015(b)(1)(C). See also Greer v. Commissioner, 595 F.3d at 351 ("Being a homemaker cannot alone relieve a spouse of joint and several tax liability."). Additionally, by signing the 2008 tax return without reviewing it, petitioner is charged with constructive knowledge of its contents. See Crouse v. Commissioner, T.C. Memo. 2011-97, slip op. at *42 (citing Bokum v. Commissioner, 94 T.C. 126, 148 (1990)), aff'd, F.2d 1132 (11th Cir. 1993). Because of the foregoing, this factor weighs against petitioner.

Of the factors to be considered under section 6015(b)(1)(C), one is neutral and three weigh against petitioner. Accordingly, we hold petitioner knew or had reason to know of the understatement and she fails to meet the requirements of section 6015(b)(1)(C).

**[\*25]** C.    Section 6015(b)(1)(D)

Section 6015(b)(1)(D) allows the Court to consider all facts and circumstances in determining whether it would be inequitable to hold a taxpayer liable for a deficiency attributable to an understatement for the tax year at issue. The factors to be considered for determining inequity under section 6015(b)(1)(D) are the same factors used for determining inequity under section 6015(f).  Alt v. Commissioner, 119 T.C. at 316 (interpreting former section 6013(e)); Garavaglia v. Commissioner, T.C. Memo. 2011-228; Crouse v. Commissioner, T.C. Memo. 2011-97.  Because we conclude that petitioner is ineligible for relief under subsection (f), discussed below, we hold that she does not meet the requirements of subsection (b)(1)(D).  Because petitioner does not meet the requirements of subsection (b)(1)(B), (C), or (D), as stated supra, she does not qualify for relief under section 6015(b).

III.    Relief Under Section 6015(f)

Petitioner argues that if we find her ineligible for relief under section 6015(b), she is alternatively eligible for relief under subsection (f).  Subsection (f) provides an individual with alternative means of relief where relief is unavailable under subsection (b) or (c) if, taking into account all the facts and circumstances, it

**[\*26]** would be inequitable to hold the individual liable for the unpaid tax or deficiency or any part thereof. Sec. 6015(f).

The Court has found that petitioner does not qualify for relief under section 6015(b), and she is ineligible for relief under section 6015(c) since she is still married to and living with intervenor. See Sec. 6015(c)(3)(A). We proceed to consider whether she is eligible for relief under section 6015(f).

Section 6015(f) directs that the Secretary may grant relief "[u]nder procedures prescribed by the Secretary". For requests filed on or after September 16, 2013, and for requests pending in any Federal court on or after September 16, 2013, Rev. Proc. 2013-34, 2013-43 I.R.B. 397, modifying and superseding Rev. Proc. 2003-61, 2003-2 C.B. 296, lists the various factors the Commissioner will consider in determining eligibility for relief under section 6015(f). Since petitioner's petition was pending on September 16, 2013, although we are not bound by them, we will analyze the guidelines contained in Rev. Proc. 2013-34, supra, to determine whether she satisfies the requirements for relief under section 6015(f). See Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Sriram v. Commissioner, T.C. Memo. 2012-91.

Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399-400, contains seven threshold conditions that a requesting spouse must satisfy before the

**[*27]** Commissioner determines he or she is eligible for relief. The seven conditions are stated in the conjunctive, and a requesting spouse must satisfy all seven conditions before relief may be granted. Id. These conditions are: (1) the requesting spouse filed a joint return for the year for which relief is sought; (2) relief is not available to the requesting spouse under section 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were transferred between the spouses as part of a fraudulent scheme; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not knowingly participate in the filing of a fraudulent joint return; and (7) absent certain exceptions, the income tax liability from which the requesting spouse seeks relief is attributable, either in full or in part, to an item of the nonrequesting spouse or an underpayment resulting from the nonrequesting spouse's income. If the liability is partially attributable to the requesting spouse, relief may still be considered for that portion of the liability attributable to the nonrequesting spouse. Id. For the seventh condition, the Commissioner may still consider granting relief regardless of whether the understatement or deficiency is attributable to the requesting spouse if any of the following exceptions applies: (1) attribution solely due to operation of community property law; (2) nominal ownership;

**[\*28]** (3) misappropriation of funds; (4) abuse; or (5) fraud committed by the nonrequesting spouse.

A requesting spouse who meets all seven threshold conditions but who does not qualify for a streamlined determination[6] may nevertheless be granted equitable relief under, Rev. Proc. 2013-34, sec. 4.03, 2013-43 I.R.B. at 400. Rev. Proc. 2013-34, section 4.03 sets out a nonexclusive list of various factors including, inter alia, economic hardship, abuse, and compliance with income tax laws. Rev. Proc. 2013-34, sec. 3.05, 2013-43 I.R.B. at 398, contains a significant change from its predecessor, Rev. Proc. 2003-61, supra, in that it clarifies that no one factor or a majority of factors necessarily controls the determination of eligibility for relief. Accordingly, a requesting spouse may still be eligible for relief even if a majority of factors weighs against relief, or a denial of relief may be appropriate even where a majority of factors weighs in favor of relief. Rev. Proc. 2003-34, sec. 3.05. Petitioner argues that she meets all seven threshold conditions and that the factors listed in Rev. Proc. 2013-34, sec. 4.03, weigh in favor of relief.

---

[6]If a requesting spouse satisfies the threshold conditions of Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. 397, 399, the Commissioner may make a streamlined determination if, inter alia, the requesting spouse is no longer married to the nonrequesting spouse. Petitioner concedes she is ineligible for a streamlined determination since she is still married to intervenor.

[*29] Petitioner does not satisfy all seven threshold conditions. Specifically, she fails to satisfy the fifth condition, which concerns the transfer of disqualified assets between spouses, and the seventh condition, which denies relief for tax liabilities attributable in full or in part to the requesting spouse. We proceed to discuss petitioner's failure to satisfy these conditions in turn and to address her arguments concerning the subfactors listed in Rev. Proc. 2013-34, sec. 4.03.

A.     Transfer of a Disqualified Asset

The fifth condition in Rev. Proc. 2013-34, sec. 4.01, requires that no disqualified assets be transferred from the nonrequesting spouse to the requesting spouse. A "disqualified asset" is defined in section 6015(c)(4)(B)(i) as "any property or right to property transferred to an individual making the election under this subsection with respect to a joint return by the other individual filing such joint return if the principal purpose of the transfer was the avoidance of tax or payment of tax."[7]

---

[7]Sec. 6015(c)(4)(B)(ii) states that "any transfer which is made after the date which is 1 year before the date on which the first letter of proposed deficiency which allows the taxpayer an opportunity for administrative review in the Internal Revenue Service Office of Appeals is sent shall be presumed to have as its principal purpose the avoidance of tax or payment of tax." The record does not reflect the date of the first letter of proposed deficiency, and accordingly, the presumption does not apply in this case.

[*30] The examination of petitioner and intervenor's 2007 tax return began in June 2008. Petitioner and intervenor both testified that intervenor transferred his share of the residence to petitioner in December 2008. Petitioner and intervenor gave varying explanations as to why they retitled their residence. In response to question 20 regarding transfer of assets on Form 8857, petitioner alleged that intervenor owed her $489,336.22 for support and maintenance stemming from (i) her payment of his student loans, (ii) using her car when his was totaled, and (iii) indemnifying her for a home equity line of credit. Petitioner stated that since intervenor was unable to repay her this amount, he transferred his portion of the residence to her. Intervenor listed nearly identical reasons for the transfer of the residence in response to question 7 regarding transfer of assets on Form 12508, Questionnaire for Non-requesting Spouse. At trial petitioner testified that the purpose of putting the residence solely in her name was "to give * * * [her] something" because intervenor had an interest in his law firm, and she "had nothing." Intervenor testified that the title transfer was effected for two purposes: (i) to balance the estate for estate planning purposes, and (ii) to protect the residence from intervenor's problems with the New Jersey Office of Attorney Ethics. Current ownership of the house is unclear from the record. Intervenor testified at trial that in October 2012 petitioner transferred the residence to her

[*31] mother. However, intervenor testified during his bankruptcy deposition in January 2012 that the residence had already been transferred to petitioner's mother. Intervenor also testified that he prepared all of the paperwork for the alleged October 2012 transfer. That transfer was purportedly made in order to repay petitioner's parents for the loan used for the downpayment on the residence, in addition to other financial support that petitioner's parents have provided over the years.

Petitioner argues that we should follow the Court's ruling in Monsour v. Commissioner, T.C. Memo. 2004-190, which found that transfers pursuant to a prenuptial agreement were not transfers of disqualified assets. Petitioner argues that, like the transfers in Monsour, the transfer of intervenor's share of the residence was done to "create parity of assets" between her and intervenor. However, at various points in this case, petitioner and intervenor have offered no fewer than four differing explanations as to why the residence was retitled solely in petitioner's name, including (1) to repay loans intervenor supposedly owed petitioner; (2) to "give * * * [petitioner] something"; (3) to balance the estate for estate planning purposes; and (4) to protect the residence from intervenor's problems with the New Jersey Office of Attorney Ethics. The Court does not find petitioner's and intervenor's testimonies on this issue to be credible. Petitioner

[*32] and intervenor have proffered so many explanations for the transfer of the residence that it is difficult to believe that any one of them is the true reason for the transfer. Moreover, it strains credulity to believe that the transfer was done to "give petitioner something", to "balance the estate", or to repay petitioner for loans in the light of the fact that petitioner supposedly later transferred the residence to her mother in either October 2012 or at some point before intervenor's bankruptcy deposition in January 2012.

When coupled with petitioner's failure to provide a credible rationale for the transfer, the proximity of the December 2008 transfer to the beginning of the 2007 tax year audit in June 2008 leads to the conclusion that the principal purpose of the transfer was the avoidance of the payment of tax. See Etkin v. Commissioner, T.C. Memo. 2005-245, slip op. at 27-32 (properties transferred to requesting spouse shortly after tax liabilities arose were disqualified assets); see also Ohrman v. Commissioner, T.C. Memo. 2003-301, slip op. at 25 (preponderance of the evidence established that assets were transferred with the principal purpose of evading tax), aff'd, 157 Fed. Appx. 997 (9th Cir. 2005). Thus, because she received a disqualified asset from intervenor, petitioner does not satisfy the fifth threshold condition of Rev. Proc. 2013-34, sec. 4.01.

[*33] Rev. Proc. 2013-34, sec. 4.01, provides that if disqualified assets were transferred to the requesting spouse by the nonrequesting spouse, relief will be available only to the extent the income tax liability exceeds the value of the disqualified asset, which in this case is petitioner and intervenor's residence. However, we need not determine the value of the residence in the light of the fact that petitioner also fails to satisfy the seventh threshold condition.

B.     Tax Liability Attributable to Items of Requesting Spouse

The seventh condition stated in Rev. Proc. 2013-34, sec. 4.01, requires the income tax liability from which the requesting spouse seeks relief to be attributable, either in full or in part, to an item of the nonrequesting spouse or an underpayment resulting from the nonrequesting spouse's income. As we determined in the portion of the report analyzing petitioner's eligibility for relief under section 6015(b)(1)(B), the erroneous items giving rise to petitioner and intervenor's tax liabilities arose from intervenor's law practice, in which petitioner actively participated. Further, many of the deductions were for personal items which petitioner has not shown were solely attributable to intervenor. Consequently, petitioner has not met the burden of proof to show that the income tax liabilities are attributable to items of intervenor or to intervenor's income.

**[\*34]** Therefore, petitioner does not satisfy all seven of the threshold conditions set forth in section Proc. 2013-34, sec. 4.01.

C.    Subfactors Under Section 4.03

Petitioner argues that she meets all seven threshold criteria and that the factors listed in Rev. Proc. 2013-34, sec. 4.03, weigh in favor of granting her equitable relief. Petitioner does not meet the seven threshold criteria, and she only satisfies one of the factors set out in Rev. Proc. 2013-34, sec. 4.03.

Rev. Proc. 2013-34, sec. 4.03, sets out a list of nonexclusive factors that may be considered in determining a requesting spouse's eligibility for relief. The Court may choose to assign varying weight to each factor or to include other factors, depending on the specific facts and circumstances of each case. See Hall v. Commissioner, T.C. Memo. 2014-171, at \*38. The factors laid out in Rev. Proc. 2013-34, sec. 4.03, are: (1) marital status, (2) economic hardship, (3) knowledge or reason to know, (4) legal obligation by either the requesting spouse or nonrequesting spouse to pay the Federal income tax liability, (5) significant benefit, (6) compliance with Federal income tax laws, and (7) mental or physical health issues. Petitioner asks us to consider two additional factors: (1) intervenor's alleged psychological and mental abuse of petitioner, and

**[\*35]** (2) effective tax administration that would allow petitioner to divorce intervenor. We discuss each of these factors in turn.

### 1. Marital Status

Petitioner and intervenor were still married and living in the same household at the time of trial. This factor is neutral.

### 2. Economic Hardship

Petitioner argues that she will suffer economic hardship if she is not granted equitable relief. For purposes of Rev. Proc. 2013-34, sec. 4.03, economic hardship "exists if satisfaction of the tax liability in whole or in part will cause the requesting spouse to be unable to pay reasonable basic living expenses." The Commissioner bases the determination of whether economic hardship exists on rules similar to those provided in section 301.6343-1(b)(4), Proced. & Admin. Regs. In determining an amount for basic living expenses, the Commissioner will consider any information provided by the taxpayer, including the taxpayer's age, employment status and history, ability to earn, number of dependents, and status as a dependent of someone else. Sec. 301.6343-1(b)(4)(ii)(A), Proced. & Admin. Regs. The Commissioner will also consider, inter alia, the amount reasonably necessary for food, clothing, housing (including utilities and homeowners' insurance), medical expenses, cost of living in the geographic area in which the

[*36] taxpayer resides, extraordinary circumstances such as special education expenses, and any other factor that bears on economic hardship which the taxpayer brings to the attention of the Commissioner.  Sec. 301.6343-1(b)(4)(ii)(B), (C), (E), (F), Proced. & Admin. Regs.

Petitioner argues she will suffer economic hardship if she is not granted relief.  Specifically, petitioner argues that (i) her only income is the $1,000 annual salary she earns from "Chinese school", (ii) intervenor's annual salary of $40,000 would not be enough to provide her with alimony or child support in the event that she divorces him, (iii) she is unable to afford speech therapy for the youngest child's suspected autism, (iv) the mortgage on the residence was in foreclosure at the time of trial, (v) petitioner and her children were receiving food stamps and enrolled in New Jersey's Medicaid program at the time of trial, (vi) all of the family's utility bills were in arrears at the time of trial, (vii) her sole assets at the time of trial were a 2003 Honda Odyssey, a 1998 Nissan Altima, an IRA worth approximately $20,000, and two bank accounts with balances totaling roughly $500, and (viii) she is unable to secure employment in a scientific field because her skills and knowledge have become "obsolete" because of the passage of time.

These allegations are supported solely by petitioner's self-serving testimony.  For example, petitioner and intervenor both testified that the mortgage

[*37] on the residence is in foreclosure, but neither party provided any notice of foreclosure, offering instead a notice of cancellation of homeowners' insurance. Petitioner and intervenor conducted extensive renovations in 2013, ostensibly to prepare the residence for sale to avoid foreclosure. Petitioner stated that they remodeled one bathroom because a crooked wall had caused water leakage into the living room, resulting in mold. Additionally, petitioner stated that they remodeled the kitchen floor, sink, countertops, and cabinets to repair damage caused by a leaking refrigerator. Petitioner stated that they performed these repairs so that they could sell the home and avoid foreclosure and that these projects were all financed with funds from her IRA. However, petitioner stated that at the time of trial, the house was not listed for sale and she was allowing intervenor to handle the alleged foreclosure or any possible sale.

Petitioner's and intervenor's testimony with regard to overdue utility bills was similarly self-serving. Petitioner offered into evidence various notices of overdue bills; however, intervenor testified that it was his habit to allow bills to accrue and then pay the minimum to avoid discontinuance of services.

Petitioner claims that, after intervenor's disbarment, she and her children were covered by Medicaid and other forms of public assistance, including food stamps. Petitioner offered into evidence a letter from the Somerset County Board

[*38] of Social Services that determined the family to be eligible for Medicaid, but she did not offer into evidence any proof that they were actually receiving food stamps or were enrolled in Medicaid at the time of trial. Further, intervenor's testimony at trial indicated that the family was no longer receiving public assistance.

In posttrial briefing, petitioner argued that her monthly living expenses totaled $6,094.83. She bases this figure on a table set forth in Drakes v. Commissioner, T.C. Memo. 2012-189, in which the Court examined the monthly living expenses of the taxpayers in that case who resided in New Jersey at the time of their examination by the Commissioner. Petitioner claims that the figures set forth in Drakes provide a reasonable picture of her living expenses. This claim ignores key facts, most importantly that the figures presented in Drakes were based first and foremost on the taxpayers' actual expenses and then adjusted to accord with national and local standards. Id. In contrast, petitioner has not provided any concrete evidence of the family's living expenses. In sum, petitioner has not proved that she will suffer economic hardship if she is not granted equitable relief. This factor is therefore neutral.

[*39]    3.    <u>Knowledge or Reason To Know</u>

For the reasons previously discussed concerning petitioner's ineligibility for relief under section 6015(b) because of her failure to satisfy subsection (b)(1)(C), we conclude that petitioner knew or had reason to know of the understatement giving rise to the tax liability.  Rev. Proc. 2013-34, sec. 4.03, directs that the presence of abuse or control of financial information by the nonrequesting spouse may mitigate or negate the requesting spouse's knowledge or reason to know of the understatement if the requesting spouse was unable to challenge the treatment of items on the tax return for fear of retaliation by the nonrequesting spouse. Petitioner stated on her Form 8857 that she was not the victim of spousal abuse. However, petitioner alleges that intervenor exercised severe financial control over the family finances and that she was therefore unable to challenge the items giving rise to the understatement.  Again, we are unconvinced by petitioner's and intervenor's testimony on this matter.  Petitioner was intimately involved in the operations of intervenor's law firm.  Intervenor described her as his "office manager" and stated under oath in his bankruptcy deposition that they talked about office matters "all the time".  Accordingly, petitioner has failed to prove that she did not know or have reason to know of the understatement.  This factor therefore weighs against relief.

[*40]     4.     Legal Obligation

Petitioner and intervenor are still married, and there is no legal obligation, such as a divorce decree, requiring one spouse or the other to pay the tax liability. This factor is neutral.

5.     Significant Benefit

Petitioner received a benefit from the understatement in the form of deductions for personal expenses. For purposes of this requirement, a significant benefit is one in excess of normal support. Respondent concedes that the benefit petitioner received from the deductions was not significant. This factor weighs in favor of relief. See, e.g., DeMattos v. Commissioner, T.C. Memo. 2010-110 (interpreting significant benefit factor under Rev. Proc. 2003-61, supra); Butner v. Commissioner, T.C. Memo. 2007-136 (same); cf. Molinet v. Commissioner, T.C. Memo. 2014-109 (interpreting significant benefit factor under Rev. Proc. 2013-34, supra).

6.     Compliance With Income Tax Laws

For purposes of this factor, the inquiry focuses on whether the taxpayer has made a good-faith effort to comply with tax laws in the tax years since the years for which relief is requested. Further, if the requesting spouse remains married to the nonrequesting spouse and continues to file joint returns after requesting relief,

**[*41]** this factor will only be neutral if the joint returns are in compliance with the tax laws.

Respondent argues that petitioner and intervenor's failure to report the 2008 State income tax refund and the 2010 cancellation of indebtedness income for tax years 2009 and 2010, respectively, renders them not in compliance with income tax laws.

Petitioner disagrees, arguing that she is in compliance because the 2008 State income tax refund is nontaxable under the tax benefit rule. The tax benefit rule states that if income is attributable to the recovery during the taxable year of any amount deducted in a prior taxable year, that income will not be included in gross income to the extent the prior deduction did not reduce tax imposed in the prior year. See sec. 111(a). Petitioner argues that since (i) the deductions petitioner and intervenor claimed on their 2008 tax return exceeded their reported income, and (ii) the reported deductions exceeded any deduction attributable to 2008 State and local taxes, they received no actual benefit from the 2008 State and local income tax deduction. Consequently, they argue that since they received no tax benefit from this deduction as reported on their 2008 tax return, there was no tax benefit to be recognized for 2009. Petitioner essentially asks us to overlook her lack of compliance because the 2008 State income tax refund would not have

[*42] been includable in income. We have previously held that unreported items indicate a lack of compliance for purposes of this factor, and we decline to carve out an exception to that rule in this case. See Pugsley v. Commissioner, T.C. Memo. 2010-255 (interpreting predecessor Rev. Proc. 2003-61, supra) (failure to report spousal alimony on original return was evidence of noncompliance despite claims that the amount had been reported on an amended return). Moreover, many of the claimed deductions on petitioner's 2008 tax return were disallowed as they were attributable to nondeductible personal expenses. Consequently, we cannot agree with petitioner that the 2008 State and local income tax deduction provided them with no tax benefit, in the light of the fact that numerous other deductions were ultimately disallowed.

Petitioner also argues that the 2010 cancellation of indebtedness income was not taxable because that income arose from intervenor's bankruptcy proceeding. See sec. 108(a)(1)(A). Due to the fact that petitioner's 2009 tax return was not in compliance with the Federal income tax laws because of her nonreporting of the 2008 State income tax refund, the issue of the 2010 cancellation of indebtedness income is moot. For the foregoing reasons, this factor weighs against petitioner.

**[*43]**        7.        <u>Mental or Physical Health Problems</u>

Under Rev. Proc. 2013-34, <u>supra</u>, this factor may weigh in favor of relief if the requesting spouse was in poor mental or physical health at the time the returns were filed, or alternatively, at the time the requesting spouse requested relief. Petitioner asks us to find that she was in poor mental health at the time of trial because of the alleged mental and psychological abuse by intervenor. We are unconvinced. <u>See, e.g.</u>, <u>Pullins v. Commissioner</u>, 136 T.C. at 454; <u>Bell v. Commissioner</u>, T.C. Memo. 2011-152, slip op. at 43 (health at time of trial is part of the Court's facts and circumstances analysis). Petitioner has not provided any supporting evidence whatsoever that she suffered from any mental or physical health problems. Petitioner has provided only her own self-serving and uncorroborated statements. Accordingly, this factor is neutral.

        8.        <u>Additional Factors</u>

Of the seven factors specifically enumerated in Rev. Proc. 2013-34, sec. 4.03, four are neutral, two weigh against petitioner, and one weighs in favor of petitioner. Nevertheless, petitioner asks us to consider two additional factors: (1) intervenor's alleged mental and psychological abuse of petitioner, and (2) effective tax administration. We consider each of these issues in turn.

**[*44]**     a.     <u>Alleged Mental and Psychological Abuse</u>

Petitioner asks us to consider the additional factor of abuse. The Court may consider abuse of the requesting spouse by the nonrequesting spouse as a factor in determining whether to grant equitable relief. See <u>Sriram v. Commissioner</u>, T.C. Memo. 2012-91. Additionally, Rev. Proc. 2013-34, <u>supra</u>, notes that, as a significant change from Rev. Proc. 2003-61, <u>supra</u>, the presence of abuse is to be given "greater deference". Further, Rev. Proc. 2013-34, sec. 4.03, states that "[a]buse comes in many forms and can include physical, psychological, sexual, or emotional abuse, including efforts to control, isolate, humiliate, and intimidate the requesting spouse, or to undermine the requesting spouse's ability to reason independently and be able to do what is required under the tax laws." All facts and circumstances are to be taken into account in determining the presence of abuse. <u>Id.</u>

Petitioner argues for the first time in posttrial briefing that she was the victim of psychological and mental abuse by intervenor. Petitioner's Form 8857 states that she was not the victim of spousal abuse or domestic violence, and petitioner stipulated this fact. Petitioner's testimony reflects that she is not satisfied with her marriage to intervenor. Additionally, petitioner testified that intervenor limited her autonomy. However, it is a far step from concluding that

[*45] petitioner's marriage is unsatisfactory to concluding that she has suffered mental and psychological abuse by intervenor, particularly when she previously represented that there was no abuse by intervenor. From all of the facts and circumstances presented to the Court, we cannot conclude that she has established the presence of abuse. Accordingly, this factor is neutral.

### b. Effective Tax Administration

Petitioner argues for an additional factor, "effective tax administration". Petitioner states that she will divorce intervenor if granted equitable relief and "the Court should not create another reason to bind * * * [petitioner] to * * * [intervenor]". Additionally, petitioner argues that "the Court should feel secure that both the Government's and * * * [petitioner]'s interests are being adequately protected by granting her equitable relief that will allow her to finally pursue her personal and financial freedom."

The Court will not engage in hypotheticals regarding the future of petitioner's marriage, particularly because of our concerns about the parties' credibility. While the Court recognizes that financial considerations (e.g., tax liabilities) may weigh in a person's decision to divorce, this Court has no proper role to play in that decision. Additionally, it would be inappropriate for the Court

[*46] to base its holding on grounds that could be perceived as either encouraging or discouraging divorce. We therefore do not consider this factor.

IV.  Conclusion

On the record before us, petitioner has failed to carry her burden of establishing that it would be inequitable to hold her liable for the tax liabilities, and the Court holds that she is not entitled to relief under section 6015(b) or (f).

To reflect the foregoing,

Decision will be entered

for respondent.