T.C. Memo. 2019-24

UNITED STATES TAX COURT

KATHERINE DENISE HENRY, Petitioner, AND TIMMY H. BLACK,
Intervenor <u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20138-16.            Filed March 27, 2019.

Katherine Denise Henry, pro se.

Timmy H. Black, pro se.

<u>Britton G. Wilson</u> and <u>Douglas S. Polsky</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>: This case arises from petitioner's request for relief from
joint and several liability under section 6015[1] with respect to an income tax

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

[*2] liability arising from certain income earned by her former husband, Timmy H. Black, that he failed to report on the joint return he filed with petitioner for the 2012 tax year. Respondent purportedly granted relief to petitioner under section 6015(c). The only relief she sought, however, was a refund of an overpayment for the 2014 tax year that the Internal Revenue Service (IRS) applied to the 2012 joint liability, and section 6015(c) does not permit refunds. Consequently, petitioner filed a timely petition seeking review of respondent's determination to deny relief under section 6015(b) and (f). Intervenor filed a timely notice of intervention. Respondent now concedes that petitioner is entitled to the relief sought under section 6015(f).[2] Only intervenor stands in the way of relief for petitioner. The sole issue for decision is whether petitioner is entitled to relief under section 6015(f).

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of fact and facts drawn from stipulated exhibits are incorporated herein by this

---

[1](...continued)
Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]In conceding relief under sec. 6015(f), respondent did not address the applicability of sec. 1.6015-4(b), Income Tax Regs.

[*3] reference. Petitioner resided in Kansas City, Missouri, at the time she filed her petition. Intervenor also resided in Kansas City, Missouri, at the time he filed his notice of intervention.

I.     The Marriage

Petitioner and intervenor married on August 16, 1997, and the marriage produced two children. During the marriage intervenor held a full-time position as a firefighter, and starting in 2011 he began playing as a musician for a church attended by the family. In 2012 the marriage failed, and petitioner filed a petition for dissolution of marriage on July 25, 2012 (divorce proceeding). After a trial held on February 27 and March 7, 2013, the Circuit Court of Jackson County, Missouri (family court), granted the divorce on May 23, 2013.

During the divorce proceeding intervenor's income, and more specifically, income from his second job as a church musician, became a contentious issue. Intervenor failed to report any wages earned from the church in his initial income disclosure to the family court. The church paid intervenor's wages by check, and intervenor either cashed the checks or deposited them into a separate account to which petitioner did not have access. Petitioner nevertheless challenged intervenor's omission during the divorce trial. Despite intervenor's testimony that the church no longer paid him for playing, the family court sided with petitioner

[*4] and included intervenor's church wages in calculating intervenor's support obligations.

## II.     Petitioner's 2012 Tax Liability and Post-2012 Tax Compliance

On February 15, 2013, while the divorce proceeding was pending but before the trial took place, petitioner and intervenor filed a joint Federal income tax return for the 2012 tax year.  The return was prepared by a paid return preparer during a meeting attended by both petitioner and intervenor.  The return reported total adjusted gross income of $64,778 but failed to include intervenor's church wages of $14,650.  Intervenor claims that petitioner knew of the income and that the reason for the omission was a missing Form W-2, Wage and Tax Statement.  Petitioner disavowed any knowledge of the income or any discussion related to a missing Form W-2 at that time.

On March 24, 2014, respondent sent petitioner and intervenor a "Notice CP2000" proposing a deficiency of $2,243 attributable to the unreported wage income from the church.  On August 25, 2014, respondent issued a statutory notice of deficiency to petitioner and intervenor.  Neither petitioner nor intervenor petitioned this Court with respect to the notice.  On January 5, 2015, respondent assessed the deficiency and an addition to tax for failure to pay under section 6651(a)(2) (plus interest).

**[*5]**   On March 9, 2015, respondent withheld $2,393 of a $6,689 overpayment that petitioner claimed on her 2014 tax return and applied it to fully pay the 2012 joint tax liability of petitioner and intervenor.  On March 16, 2015, respondent sent a notice to petitioner informing her of this offset.

Since filing her 2012 tax return, petitioner has remained in compliance with her tax filing and payment obligations.

### III.   Petitioner's Section 6015 Request for Relief

On March 20, 2015, petitioner filed a request for section 6015 relief to recover the portion of her 2014 tax refund that respondent had applied against the unpaid joint tax liability for 2012.  Petitioner based her request for relief on a lack of knowledge of the unreported income, her limited participation in the preparation of the return, her financial hardship, and her limited financial expertise.  Petitioner claimed $955 in assets, a monthly income, including alimony and Government assistance, of $2,128, and monthly expenses of $2,653.

As part of the administrative process, on April 17, 2015, respondent notified intervenor of petitioner's request for section 6015 relief and of his right to participate by providing additional information.  Intervenor, as the nonrequesting spouse, completed a questionnaire on which he claimed that petitioner had full knowledge of the unreported income and participated equally in household

[*6] finances and the preparation of the 2012 tax return.  Intervenor alleged that petitioner knew about the unreported income because:  (1) she signed the 2011 tax return which included income from the same church; (2) the parties consulted their tax preparer regarding the missing Form W-2, and their tax preparer suggested they amend the return at a later date; and (3) in the divorce proceedings, after his initial nondisclosure, his church income was included for purposes of calculating spousal and child support.

On February 1, 2016, respondent issued a preliminary determination proposing to deny relief to petitioner.  Respondent proposed to deny relief under section 6015(b) and (c) because petitioner had actual knowledge of the unreported income and had reason to know of the tax understatement.  Respondent proposed to deny relief under section 6015(f) because petitioner had knowledge of the understatement and failed to establish economic hardship.

Petitioner appealed respondent's preliminary determination by filing a statement of disagreement indicating she would like her section 6015 case transferred to the Appeals Office.  The statement of disagreement largely reiterated petitioner's position in her initial request for section 6015 relief.  Appeals Officer (AO) Karen Lancaster held telephone conferences with petitioner and intervenor and accepted document submissions from both parties.

[*7]   On July 26, 2016, AO Lancaster issued a final Appeals determination purportedly granting relief under section 6015(c) but denying a refund to petitioner.  AO Lancaster found that petitioner did not qualify for relief under section 6015(b) because she had reason to know of the unreported income that triggered the deficiency.  AO Lancaster did not address relief under section 6015(f) in either the final Appeals determination or the case memorandum.[3]

On September 13, 2016, petitioner filed a timely petition with this Court. On December 14, 2016, intervenor filed a timely notice of intervention.  Trial was held on February 5, 2018, in Kansas City, Missouri.  As of the trial date, petitioner was working as an instructional assistant for special needs children but resigned that position as of the end of the 2017-18 school year because of a serious medical condition.  Petitioner was receiving Social Security disability payments of $999 per month because of her medical condition.  After her resignation became effective, petitioner's only income would be her Social Security disability payments and her $500 monthly alimony payments.

---

[3]We surmise that the Appeals Office did not address relief under sec. 6015(f) because it "granted" relief under sec. 6015(c).  Sec. 6015(f) relief applies only when the requesting spouse does not qualify for relief under sec. 6015(b) and (c).  Sec. 6015(f)(2).

**[*8]**                                       OPINION

We have jurisdiction to review respondent's denial of petitioner's request for relief under section 6015. See sec. 6015(e)(1). In doing so we apply a de novo standard of review as well as a de novo scope of review. See Porter v. Commissioner, 132 T.C. 203, 210 (2009). As a general rule, a taxpayer requesting relief under section 6015 bears the burden of proving that he or she is entitled to relief. See Rule 142(a); Porter v. Commissioner, 132 T.C. at 210.

Married taxpayers may file a joint Federal income tax return. Sec. 6013(a). Spouses who elect to file a joint return for a tax year are required to compute their tax for the tax year on the aggregate income of both spouses, and the liability for that tax is joint and several. See sec. 6013(d)(3). Under certain circumstances, however, a taxpayer who filed a joint return may qualify for relief from joint and several liability. Sec. 6015.

Section 6015 provides three avenues for relief from joint and several liability. Section 6015(a)(1) provides that under section 6015(b) a spouse who has filed a joint return may seek relief from joint and several liability for an understatement of tax. Section 6015(a)(2) provides that under 6015(c) a spouse who meets certain criteria may elect to allocate a joint liability as permitted by section 6015(d) (generally, as if the spouses had filed separate returns). If relief is

[*9] not available under either section 6015(b) or (c), a taxpayer may seek equitable relief under section 6015(f), which the Commissioner may grant in his discretion.

Petitioner contends that she is entitled to full relief from the 2012 liability and, more specifically, to a refund of the 2014 overpayment that respondent applied against the 2012 joint liability. We construe her contentions as a prayer for relief under section 6015(f).

Respondent has now conceded that petitioner is entitled to relief under section 6015(f). We construe that concession as an acknowledgment that petitioner is not entitled to relief under sections 6015(b) or (c). We will decide the only remaining dispute between petitioner and intervenor, which is whether petitioner is entitled to relief under section 6015(f).

A requesting spouse may seek relief under section 6015(f) upon a showing that: (1) taking into account all the facts and circumstances, it would be inequitable to hold the requesting spouse liable for any unpaid tax and (2) the requesting spouse does not qualify for relief under subsection (b) or (c). That petitioner is not eligible for relief under section 6015(b) or (c) is not disputed. We, therefore, turn our inquiry to whether, under the facts and circumstances, it would be inequitable to hold petitioner liable for the unpaid tax.

**[*10]** The Commissioner published guidance in Rev. Proc. 2013-34, 2013-43 I.R.B. 397, <u>modifying and superseding</u> Rev. Proc. 2003-61, 2003-2 C.B. 296, setting forth the framework that the IRS uses to evaluate requests for relief under section 6015(f). Under Rev. Proc. 2013-34, <u>supra</u>, a taxpayer must first meet certain threshold conditions in section 4.01, and then he or she must either qualify for a streamlined determination to grant relief under section 4.02 or qualify under the full facts and circumstances test of section 4.03. <u>Id.</u> sec. 4.01, 4.02, and 4.03, 2013-43 I.R.B. at 399-403. We consider these factors in the light of the attendant facts and circumstances, but we are not bound by them. See <u>Pullins v. Commissioner</u>, 136 T.C. 432, 438-439 (2011).

1.     <u>Threshold Conditions</u>

Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399, sets forth seven threshold conditions that a requesting spouse must satisfy to qualify for relief under section 6015(f): (1) the requesting spouse filed a joint Federal income tax return for the relevant year; (2) the requesting spouse does not qualify for relief under section 6015(b) or (c); (3) the requesting spouse filed a timely request for relief; (4) no assets were transferred between the spouses as part of a fraudulent scheme; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not knowingly participate in the

[*11] filing of a fraudulent joint return; and (7) the liability from which relief is sought is attributable to an item of the nonrequesting spouse.

Respondent concedes, and intervenor does not dispute, that petitioner meets the threshold conditions. Petitioner meets the first, second, third, and seventh requirements: (1) petitioner filed a joint return; (2) as inferred from respondent's concession, petitioner does not qualify for alternate relief; (3) petitioner filed a timely claim for relief; and (7) the liability is attributable to intervenor. The remaining requirements relate to fraud or improper asset transfers, and no party contends that there was fraud or improper asset transfers, nor do we find any evidence of such. Consequently, we find that petitioner meets the threshold conditions for relief under section 6015(f).

2.    Streamlined Determination

When a requesting spouse satisfies the threshold conditions of Rev. Proc. 2013-34, sec. 4.01, we next consider whether the requesting spouse is entitled to a streamlined determination of equitable relief pursuant to Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400. A requesting spouse is eligible for a streamlined determination if, among other requirements, as of the date she filed the return, she did not know or have reason to know of an understatement on the joint income tax return. Rev. Proc. 2013-34, sec. 4.02.

**[*12]** Because petitioner had reason to know of the understatement, see infra pp. 13-16, we find petitioner does not qualify for a streamlined determination.

3.     All Facts and Circumstances

If a requesting spouse is not entitled to a streamlined determination, we evaluate the request for relief taking into account all the facts and circumstances. Rev. Proc. 2013-34, sec. 4.03(2), 2013-43 I.R.B. at 400.  Rev. Proc. 2013-34, sec. 4.03, focuses the analysis on a number of factors, including, but not limited to: (a) marital status, (b) economic hardship, (c) knowledge, (d) legal obligations to pay the tax, (e) significant benefits reaped from the understatement, (f) subsequent compliance with income tax laws, and (g) mental or physical health.  Id.  No single factor is determinative.  Id.

a.     Marital Status

The marital status factor weighs in favor of relief when the requesting spouse is no longer married to the nonrequesting spouse.  Id. sec. 4.03(2)(a). Because petitioner divorced intervenor in 2013, this factor weighs in favor of relief.

**[\*13]** b.     Economic Hardship

A requesting spouse will suffer economic hardship, which weighs in favor of relief, if satisfaction of the tax liability will impair her ability to pay reasonable basic living expenses.  Id. sec. 4.03(2)(b), 2013-43 I.R.B. at 401; see also McKnight v. Commissioner, T.C. Memo. 2006-155, 2006 WL 2087750, at \*8. This inquiry takes into account petitioner's income, expenses, and assets.  Rev. Proc. 2013-34, sec. 4.03(2)(b).  Petitioner's medical condition currently prevents her from holding full-time employment, severely hindering her income-earning potential.  As of the trial date, her monthly income, consisting of $500 in alimony and $999 in Social Security disability payments, totaling $1,499, is substantially lower than her total monthly expenses of $2,653.  On the basis of her income and expenses, as well as her serious medical challenges, we conclude that petitioner would suffer economic hardship if we deny relief.  This factor favors relief.

c.     Knowledge or Reason To Know

If the requesting spouse knew or had reason to know of the understatement as of the date the joint return was filed, this factor will weigh against relief.  Id. sec. 4.03(2)(c)(i)(A).  Although not controlling, we find that the regulations applicable to knowledge under section 6015(b) and (c) provide a useful framework for the analysis under section 6015(f).  See, e.g., Jacobsen v. Commissioner, T.C.

**[\*14]** Memo. 2018-115 (applying the knowledge analysis under section 6015(b) to the section 6015(f) analysis); Durland v. Commissioner, T.C. Memo. 2016-133 (applying the knowledge analysis under section 6015(c) to the section 6015(f) analysis).

### i.     Actual Knowledge

We consider all the facts and circumstances in deciding whether a taxpayer had actual knowledge of unreported income. See sec. 1.6015-3(c)(2)(iv), Income Tax Regs. Although the regulations provide only modest guidance, we can extract some principles that inform our analysis. See id. First, knowledge of a spouse's receipt of income, which is not reported, constitutes actual knowledge of the unreported income. Id. subdiv. (i)(A). Second, knowledge of the source of the income does not in itself constitute actual knowledge of omitted income. Id. subdiv. (iii). We accept as credible petitioner's testimony that she did not know that intervenor received a salary from the church for 2012 because intervenor either cashed the checks or deposited them into a separate account she could not access. Petitioner's knowledge of the source of the income--that intervenor played

**[\*15]** for the church--does not establish actual knowledge that the church paid wages to intervenor in 2012.[4]

Both petitioner and intervenor provided testimony to the Court supporting their respective positions. Intervenor's testimony was not credible enough to undermine our conclusion that petitioner did not have actual knowledge of intervenor's unreported income.

###### ii. Reason To Know

A requesting spouse has reason to know of an understatement if a reasonable person in similar circumstances would have known of the understatement. Sec. 1.6015-2(c), Income Tax Regs. We consider all the relevant facts and circumstances in determining whether a requesting spouse had reason to know of an understatement. Rev. Proc. 2013-34, sec. 4.03(2)(c)(iii), 2013-43 I.R.B. at 402. Although Rev. Proc. 2013-34, sec. 4.03(2)(c)(iii), lists several factors that bear on the analysis,[5] we find that the following factors are most

---

[4]Additional factors that can indicate actual knowledge of unreported income include: (1) any deliberate effort by the requesting spouse to avoid learning of the unreported income and (2) joint ownership of the property giving rise to the unreported income. Sec. 1.6015-3(c)(2)(iv), Income Tax Regs. Neither factor is relevant in this case.

[5]The factors listed in Rev. Proc. 2013-34, sec. 4.03(2)(c)(iii), 2013-43 I.R.B. 397, 402, include: (1) the requesting spouse's level of education, (2) any deceit or

(continued...)

**[*16]** pertinent to our analysis: (1) whether petitioner knew of the source of the income and (2) whether the omitted item represented a departure from a prior reporting position. See sec. 1.6015-2(c), Income Tax Regs.

On their joint return for the year preceding the year at issue here, petitioner and intervenor reported intervenor's wage income from the same church that paid intervenor in 2012. Moreover, during the divorce trial--held two weeks after the filing of the return--petitioner alleged that intervenor had omitted his church wages from his income disclosure. Petitioner's challenge at the divorce trial at the very least indicates, and we find, that petitioner knew at the time she signed the 2012 joint return that intervenor continued to play for the church in 2012. Because petitioner knew that intervenor received a salary from the church in 2011 and that intervenor continued to play for the church in 2012, we find that petitioner had reason to know that intervenor received income from his work as a musician, which was not reported on the 2012 joint return. This factor weighs against relief.

---

[5](...continued)
evasiveness of the nonrequesting spouse, (3) the requesting spouse's degree of involvement in the activity generating the liability, (4) the requesting spouse's involvement in household financial matters, (5) the requesting spouse's financial expertise, and (6) any lavish or unusual expenditures.

**[*17]** d. <u>Legal Obligation</u>

If the nonrequesting spouse had a legal obligation to pay the outstanding tax liability, apart from the income tax laws, this factor weighs in favor of relief; if the requesting spouse had the obligation, this factor weighs against relief. Rev. Proc. 2013-34, sec. 4.03(2)(d). This factor is neutral in the absence of any legal agreement assigning responsibility for the payment of outstanding income tax liabilities. <u>Id.</u> Because we find nothing in the record indicating that either petitioner or intervenor had a legal obligation to pay this outstanding joint tax liability, this factor is neutral.[6]

e. <u>Significant Benefit</u>

If the requesting spouse receives a significant benefit from the understatement, this factor weighs against relief. <u>Id.</u> sec. 4.03(2)(e). Under Rev. Proc. 2013-34, <u>supra</u>, if the unpaid tax is small such that neither spouse received a significant benefit, this factor is neutral. This Court, however, treats the lack of a significant benefit as a factor favoring relief. <u>See, e.g.</u>, <u>Wang v. Commissioner</u>,

---

[6]The divorce decree allocates the Federal tax dependency exemptions for the children to intervenor. Petitioner, however, claimed the benefits with respect to one child for the 2014 tax year, alleging that intervenor gave her permission to do so. Intervenor contends that he did not agree to allow petitioner to claim the benefit and petitioner is not entitled to relief because she claimed an improper benefit. We need not decide this dispute to decide the sec. 6015(f) issue before us.

[*18] T.C. Memo. 2014-206, at *40. Because petitioner did not receive any benefit from intervenor's unreported income, we find this factor favors relief.

f.      Compliance With Income Tax Laws

If the requesting spouse has made a good faith effort to comply with the income tax laws in the tax years following the tax year to which the request for relief relates, this factor weighs in favor of relief. Rev. Proc. 2013-34, sec. 4.03(2)(f). Because petitioner has complied with the income tax laws in the years following her divorce, this factor favors relief.

g.      Mental and Physical Health

"This factor will weigh in favor of relief if the requesting spouse was in poor mental or physical health * * * at the time the requesting spouse requested relief." Id. sec. 4.03(2)(g), 2013-43 I.R.B. at 403. We also consider a taxpayer's mental and physical health at the time of trial. See Pullins v. Commissioner, 136 T.C. at 454; Bell v. Commissioner, T.C. Memo. 2011-152. At the time of trial, petitioner suffered from a serious medical condition, so we find that this factor weighs in favor of relief.

4.      Conclusion

After considering and weighing all the factors, we find it would be inequitable to hold petitioner liable for the 2012 tax liability. Although we do not

[*19] base our decision on a simple tally of the factors, we note that five factors weigh in favor of relief, one is neutral, and one weighs against relief.  See Hudgins v. Commissioner, T.C. Memo. 2012-260, at *39-*40.  After considering all of the relevant facts and circumstances, we find that petitioner meets the requirements of section 6015(f) and is entitled to relief under section 6015(f).  The Court has considered all the other contentions of the parties and, to the extent not discussed above, finds those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered for petitioner.